963 F.2d 201
 35 Fed. R. Evid. Serv. 628
 Eddie PARRISH, Appellee,
v.
Donnell LUCKIE, Individually and in his official capacity as
an officer of the North Little Rock Police Department; Dale
Bruce, Individually and in his official capacity as former
chief of the Police Department of North Little Rock, AR, Appellants.
 No. 91-3336.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 28, 1992.
Decided April 30, 1992.
 
 Terry R. Ballard, North Little Rock, Ark., argued, for appellants.
 Morgan E. Welch, Little Rock, Ark., argued, for appellee.
 Before ARNOLD, Chief Judge, and JOHN R. GIBSON and MAGILL, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 The City of North Little Rock, Arkansas, appeals from a jury verdict awarding Eddie Parrish $200,000 for civil rights violations. The jury found that Police Officer Donnell Luckie deprived Parrish of her constitutional rights by falsely arresting and raping her. The jury also found that Police Chief Dale Bruce was aware of Luckie's propensity to commit assault but failed to take preventative measures.[1] We affirm.
 
 I.
 
 2
 North Little Rock Police Officer William Kovach on July 23, 1988, approached a parked car that had been reported stolen. Parrish was a passenger in the car. Police Officers Donnell Luckie and David Dallas responded to the call for backup. Kovach, the lead officer, determined that Parrish should not be arrested. Luckie, however, laughed and told Parrish, "Ho, ho, ho! You could go to jail, too." Officer Luckie indicated to the other officers that he was going to scare Parrish by telling her that the car's driver had told him that the drugs found in the car belonged to Parrish. Luckie read Parrish her Miranda rights, locked her in the back of his police cruiser, and retained her purse in the front seat.[2] Luckie drove Parrish to an isolated portion of North Little Rock and forced her to perform oral sex on him.
 
 
 3
 After being released, Parrish went to a relative's home and the police were called. Officer Dallas, who responded to the call, was one of the officers at the scene of the initial arrest. Dallas refused to take Parrish's statement, claiming she would have to complain personally to Dallas' supervisor. Officer Dallas immediately informed Luckie of the complaint. Luckie told Dallas not to report the incident to his supervisor because he knew that if a written complaint was not filed, the Department would not investigate. Parrish filed a written complaint with the Police Department. Luckie later was charged with rape and pleaded guilty to first degree sexual abuse.
 
 
 4
 Parrish filed suit under 42 U.S.C. § 1983 against Luckie in his individual and official capacities, and against then Police Chief Bruce in his official capacity.[3] The jury found Luckie liable in his official capacity and awarded damages of $150,000. The jury also found Chief Bruce liable in his official capacity and awarded damages of $50,000.[4] The district court[5] rejected appellant's motion for judgment notwithstanding the verdict and this appeal followed. The City raises several issues on appeal. We address its arguments in turn.
 
 A. Insufficiency of Evidence
 
 5
 The City argues Parrish failed to present sufficient evidence to establish a city policy or custom of failing to accept, act on, or investigate complaints of violence and sexual misconduct by police officers. A city is not vicariously liable for the acts of its employees, but is liable under § 1983 when the employee's acts execute or implement a municipal custom or policy. Harris v. City of Pagedale, 821 F.2d 499, 504 (8th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987). To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action. Id.
 
 
 6
 In reviewing a challenge to the sufficiency of the evidence to support a jury verdict, we consider all evidence in the light most favorable to the verdict. Id. at 506. Parrish presented detailed and compelling evidence that the North Little Rock Police Department under Chief Bruce implemented a policy of avoiding, ignoring, and covering up complaints of physical and sexual abuse by Luckie and other officers.
 
 
 7
 When Luckie applied to be a police officer in North Little Rock in 1985, his application, testing, and background check revealed only a 1982 disorderly conduct conviction. Luckie was hired. Chief Bruce was notified on September 18, 1986, that Luckie was the subject of a 1984 child abuse investigation. The letter also informed Chief Bruce that Luckie would be charged with felony child abuse for whipping his ten-year-old son with an extension cord on July 4, 1986.[6] Chief Bruce took no disciplinary action against Luckie until October 3, 1986, when Luckie was arrested. When Luckie agreed with prosecutors to undergo counseling in exchange for having the felony charge dropped, Chief Bruce reinstated Luckie with full backpay. Chief Bruce made no investigation into either the 1984 or 1986 incidents, even though he was aware that Luckie admitted both incidents and even though officers normally are terminated when they are found to have concealed information on their applications. Evidence revealed that the Department's practice under Chief Bruce was to distinguish between private and public violence when reviewing an officer's propensity for violence.
 
 
 8
 On March 9, 1987, Luckie filed a "use of force" report, but the Department found that no action was necessary.[7] Following a citizen's written complaint, the Department opened an internal affairs investigation on Luckie on April 13, 1987. The citizen charged that Luckie had been parked in an alley with a female prisoner in his unlit patrol car. Luckie, subsequently, wrote the complainant a ticket for having expired tags, although the complainant's tags had not expired. The Department took no action.
 
 
 9
 The Department also failed to take action on "use of force" reports filed by Luckie on November 3, 1987, January 23, 1988, and June 26, 1988. The last of these reports stemmed from an incident in which Luckie admitted striking a prisoner who then required stitches. No citizen filed a written complaint in any of these three incidents.
 
 
 10
 In April or March of 1988, Linda Hale, the clerk of a convenience store frequented by Luckie, complained to two North Little Rock officers that Officer Luckie repeatedly had requested sexual favors, including oral sex, from her and other women with whom she worked. No written complaint was made. The Department took no action. The rape of Parrish occurred on July 23, 1988. The departmental investigation commenced after Parrish filed a written complaint.
 
 
 11
 Additional evidence showed that Chief Bruce's Department operated under customs and policies which showed deliberate indifference to the constitutional rights of citizens. Chief Bruce created and maintained a system in which he was the only person who could open an internal affairs investigation. Chief Bruce maintained a policy of opening investigations only when citizens filed written complaints. After Chief Bruce opened an investigation, he controlled its scope and direction. Investigators would report to Chief Bruce as to whether the written complaint was substantiated or unsubstantiated. Under Department policy, a written complaint was deemed substantiated only when the officer's guilt was proven beyond a reasonable doubt.
 
 
 12
 Evidence also showed that the Department required citizens filing written complaints against officers to submit a statement under oath and to sign a statement that they understood Arkansas' felony statute regarding false swearing. Investigators also discouraged citizens from filing complaints by telling persons that if the investigator believed they were not telling the truth, they might be prosecuted and fined or imprisoned. If a citizen failed to follow through on a complaint or cooperate with an investigation, the investigator would forward the complaint to Chief Bruce as unsubstantiated.
 
 
 13
 Chief Bruce created and maintained a use-of-force reporting system under which he would not be notified of physical force exerted by officers unless one of his lieutenants or sergeants determined the use of force was unwarranted. Chief Bruce testified that he developed this use-of-force reporting system because "I was getting reports of too much excessive force being used." Chief Bruce did not review use-of-force files that were not forwarded to him and his Department kept no log on the history of force used by particular officers.
 
 
 14
 Reviewing the record, we find overwhelming evidence to support the jury's finding that North Little Rock police officers operated in a system where reports of physical or sexual assault by officers were discouraged, ignored, or covered up. Moreover, evidence revealed that officers operating under this system recognized they could act with impunity unless a citizen filed a written complaint. Clearly, the North Little Rock Police Department operated "inherently deficient ... police administrative procedures involving the discovery of police misconduct." Brandon v. Holt, 469 U.S. 464, 467, 105 S.Ct. 873, 875, 83 L.Ed.2d 878 (1985).
 
 B. Evidence of Violence
 
 15
 The City argues that the district court erred in admitting evidence of violent episodes involving Luckie and other officers to show knowledge by Chief Bruce of Luckie's propensity for sexual assault. The City argues that knowledge of violent behavior does not provide knowledge of a propensity to commit sexual assault. We reject this argument because we find that all of the activities admitted into evidence constituted acts of violence. First degree sexual abuse is a violent crime. Arkansas statutes provide:
 
 
 16
 (a) A person commits sexual abuse in the first degree if:
 
 
 17
 (1) He engages in sexual contact with another person by forcible compulsion.
 
 
 18
 Ark.Code Ann. § 5-14-108 (1987).
 
 
 19
 (2) "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person.
 
 
 20
 Ark.Code Ann. § 5-14-101 (1987). See also U.S. Federal Bureau of Investigation, Crime in the United States: Uniform Crime Reports for the United States (1990) (classifying forcible rape as a violent felony).
 
 
 21
 Clearly, the reports of violent behavior are relevant to show that Chief Bruce had knowledge of Luckie's propensity toward violence. For instance, if Luckie had locked Parrish in the back of his patrol car and beat her up instead of sexually assaulting her, the City could not have raised this claim. The City's argument attempts to pigeonhole Luckie's various assaults as distinct and unrelated crimes. According to this argument, if a man whips his child with an extension cord, then dons his police uniform and beats up a prisoner, then locks a female prisoner in his squad car and forces her to perform oral sex on him, the acts are unrelated. It is clear, however, all of these acts constitute crimes of violence. First degree sexual assault is, first and foremost, a crime of violence.
 
 
 22
 Moreover, it is well settled that a court may admit evidence of violence to show knowledge of a propensity toward sexual attack. Jane Doe A v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 646 (8th Cir.1990); Vosburg v. Solem, 845 F.2d 763, 765-66 (8th Cir.), cert. denied, 488 U.S. 928, 109 S.Ct. 313, 102 L.Ed.2d 332 (1988); Harris, 821 F.2d at 501; Martin v. White, 742 F.2d 469, 471-72 (8th Cir.1984). See also Herrera v. Valentine, 653 F.2d 1220, 1225 (8th Cir.1981) (evidence of sexual misconduct is admissible to show knowledge of a propensity for violence).
 
 C. Jury Instruction
 
 23
 The City argues that the district court erred by not instructing the jury that Parrish was required to show a "continuing, widespread, persistent pattern of violations" to establish liability of the City. This argument is without merit. The district court instructed the jury:
 
 
 24
 Your verdict must be for the plaintiff and against the City of North Little Rock on the plaintiff's constitutional claims if the plaintiff has proved all of the following elements by a preponderance of the evidence.
 
 
 25
 FIRST, there was a pattern of violations of citizens' constitutional rights by acts of physical or sexual abuse by Defendant Luckie or other city police officers;
 
 
 26
 SECOND, Defendant Bruce, as police chief, knew of these incidents of unconstitutional police misconduct;
 
 
 27
 THIRD, Defendant Bruce was deliberately indifferent or tacitly authorized the unconstitutional acts by a failure to take remedial steps following notice of the acts; and
 
 
 28
 FOURTH, as a direct result, the plaintiff was injured.
 
 
 29
 If any of the above elements have not been proved by a preponderance of the evidence, then your verdict must be for the City of North Little Rock.
 
 
 30
 Parrish v. Luckie, No. LR-C-89-523, mem. at 4 (E.D.Ark. Sept. 23, 1991) (emphasis added). The City argues that the words "continuing, widespread, persistent" should have preceded the word "pattern" in the first element. It is clear, as the district court noted, that the crucial word in establishing the elements of a civil rights action in cases such as this is "pattern." There is no talismanic quality to the phraseology suggested by the City, which was used in Jane Doe A. Harris, which was cited with approval by Jane Doe A, did not contain the preliminary language offered by the City. The district court's instruction adequately stated the law and comports with Monell v. New York City Dep't of Social Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The City's proffered language merely lays out the common characteristics of the word "pattern" and is, therefore, surplusage. The district court did not clearly err in excluding it.
 
 
 31
 D. Liability of Luckie and Chief Bruce in Official Capacity
 
 
 32
 The City argues that since the jury did not find against Luckie in his individual capacity, the claim against Luckie and Chief Bruce in their official capacities must fail as a matter of law. There is no requirement that an individual be found liable in his individual capacity before that individual or anyone else may be found liable in their official capacity. Brandon, 469 U.S. at 469, 105 S.Ct. at 876-77.
 
 
 33
 While it is true that a claim against an actor in his official capacity fails when the jury determines that the plaintiff's constitutional rights were not violated, City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (per curiam); Reynolds v. City of Little Rock, 893 F.2d 1004, 1007 (8th Cir.1990), that is not the case here. The jury found that Officer Luckie deprived Parrish of her constitutional rights. The jury instructions required this finding before the jury could find against Luckie in his official capacity.
 
 
 34
 You are instructed that the City of North Little Rock may be liable where you find that the plaintiff has been deprived of her constitutional rights and such deprivation was done pursuant to a governmental policy, custom, ordinance, regulation or decision.
 
 
 35
 Parrish v. Luckie, No. LR-C-89-523, mem. at 4 (E.D.Ark. Sept. 23, 1991).
 
 
 36
 Even if the City could contend that the jury's verdict was inconsistent, the City caused the confusion by requesting that Luckie be placed on the verdict form in both his personal and official capacities. The district court judge explained to the jury that a finding against Luckie in his personal capacity would be paid by Luckie, while a finding against Luckie in his official capacity for acts done pursuant to a governmental policy, custom or decision would be attributable to the City. Id. Moreover, the City waived any claim of inconsistent verdicts when it failed to object to the inconsistency before judgment was entered.[8] If a party feels that a jury verdict is inconsistent, it must object to the asserted inconsistency and move for resubmission of the inconsistent verdict before the jury is discharged or the party's right to seek a new trial is waived. Lockard v. Missouri Pac. R.R., 894 F.2d 299, 304 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 134, 112 L.Ed.2d 102 (1990).
 
 
 37
 Chief Bruce also may be liable in his official capacity, even though Luckie was found not liable in his individual capacity. A public entity or supervisory official may be liable under § 1983, even though no government individuals were personally liable. Pembaur, 475 U.S. at 484-85, 106 S.Ct. at 1300-01; Praprotnik v. City of St. Louis, 798 F.2d 1168, 1172-73 n. 3 (8th Cir.1986), rev'd on other grounds, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Garcia v. Salt Lake County, 768 F.2d 303, 310 (10th Cir.1985) ("Monell does not require that a jury find an individual defendant liable before it can find a local governmental body liable.").
 
 E. Double Damages
 
 38
 The City argues that the award of $150,000 against Luckie in his official capacity and of $50,000 against Chief Bruce in his official capacity constitutes an award of double damages. The jury's verdict, as approved by the trial judge, clearly indicated that Parrish was to receive $200,000 in damages. After apportioning the amount of damages against Luckie and Chief Bruce, the jury's verdict concluded: "The total compensatory damages are $200,000. Punitive damages against Mr. Luckie are zero." The jury's verdict could not be more clear. They did the math. Even if this court could glean an inconsistency from such a concrete statement, the City led to any confusion by requesting that separate lines for damages be provided for both Luckie and Chief Bruce.
 
 II.
 
 39
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 The jury found both Luckie and Bruce liable in their official capacities. Suits against persons in their official capacity are just another method of filing suit against the entity. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Therefore, the appellants in this case will collectively be referred to as the City
 
 
 [2]
 Parrish testified that she believed she was under arrest. Officers Kovach and Dallas both testified that she was reasonable in her assumption
 
 
 [3]
 Neither Luckie nor Chief Bruce remain on the North Little Rock police force
 
 
 [4]
 It is unclear whether the jury found in favor of Luckie in his personal capacity. The two verdict forms addressing Luckie's personal liability--one for the plaintiff and one for the defendant--were not completed by the jury. No one objected to this oversight. Nevertheless, this opinion assumes the jury meant to find for Luckie in his personal capacity
 
 
 [5]
 The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas
 
 
 [6]
 Luckie testified at an administrative hearing that he whipped his son with a belt for disciplinary reasons after catching him playing with matches
 
 
 [7]
 "Use of force" reports are filed by officers whenever they use force in arresting someone
 
 
 [8]
 After polling the jury upon the reading of its verdict, the district court judge asked:
 Would any of the attorneys care to look at the verdict forms or to examine the verdict in any way before I dismiss the jury?
 Mr. Ballard: No, your honor.
 Mr. Welch: No, ma'am.
 Mr. Treece: No, your Honor.
 Tr., vol. 5 at 84.