Steven SUNN, Plaintiff,

v.

CITY & COUNTY OF HONOLULU; Chief Michael Nakamura; Officer Scott Tamasaka; Officer Spencer Parker; Officer Vincent Domingcil; Officer Dawnelyn Lavarias; Officer Cannen Abelira; Officer George Faris; Officer Mark Thompson; Officer Jason Kawabata; and Officer Robert Steiner, Defendants.

Civ. No. 93–00012 HMF.

United States District Court, D. Hawaii.

May 19, 1994.

Jack F. Schweigert, Schweigert & Hossell-man, Honolulu, HI, for plaintiff.

Ronald B. Mun, Michael N. Tanoue, Michael B. Kennett, Corp. Counsel, City &

County of Honolulu, Honolulu, HI, for defendants.

### ORDER DENYING CITY'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

FONG, District Judge.

On May 16, 1994 the court heard defendant City and County of Honolulu's (the "City") motion for summary judgment. On March 4, the court granted the individual defendants' motion for summary judgment on plaintiff's § 1983 claims but denied summary judgment as to the officer defendants' liability under common law false arrest. The court denied plaintiff's cross motion for summary judgment and did not rule as to plaintiff's claims against the City for § 1983 liability. The instant motion seeks summary judgment in favor of the City on plaintiff's § 1983 claims. For the reasons detailed below, the court DENIES the City's motion.

### BACKGROUND

Plaintiff Steven Sunn ("Sunn") is a street musician who sings and plays the keyboard and saxophone on the public streets of Waikiki. Sunn does not charge any price for this entertainment, but he does place a receptacle in front of him while playing for "tips." He receives about $50.00 in tips a month; his primary source of income is disability benefits and food stamps.

During 1991 and 1992, Sunn was arrested nine times for peddling in Waikiki[1]. Five of those arrests[2] are the subject of this litigation. The facts of each arrest are similar. In each case a police officer observed Sunn playing an instrument and then saw an individual giving Sunn money either by placing it in the container or by giving it to Sunn directly. After observing Sunn receive money, the officer arrested him.

The statute that prohibits peddling in Waikiki states, in relevant part:

> Notwithstanding any ordinance to the contrary, it is unlawful for any person to sell or offer for sale, rent or offer for rent, goods, wares, merchandise, foodstuffs, refreshments or other kinds of property or services in the following areas:
>
> *   *   *   *   *   *
>
> Waikiki Peninsula upon the public streets, alleys, sidewalks, malls, parks, beaches and other public places in Waikiki commencing at the entrance to the Ala Wai Canal, thence along the Ala Wai Canal to Kapahulu Avenue, thence along the diamond property line of Kapahulu Avenue to the ocean thence along the ocean back to the entrance of the Ala Wai Canal.

Revised Ordinances of Honolulu § 29–6.2 (formerly § 26–6.2). Defendants argue that Sunn was "offering for sale" the "service" of playing music in violation of the above ordinance. The officer defendants conceded that there is no law that prohibits Sunn from playing his music for free. Each of the officer defendants testified that they believed they had probable cause to arrest plaintiff under the statute quoted above.

With respect to each of the five arrests at issue, Sunn was found not guilty. In three of the cases—the arrests by Parker, Kawabata and Steiner—the presiding judge found the statute inapplicable to Sunn because he was not selling a service. *See State of Hawaii vs. Steven L. Sunn*, No. 55A–59A of 2/18/92 (State of Hawaii, 1st Cir.) at 7; *State of Hawaii vs. Steven L. Sunn*, No. 27P of 1/22/93 at 10; *State of Hawaii vs. Steven L. Sunn*, No. 20P of 3/5/93 at 3.

On December 21, 1993 the officer defendants moved for summary judgment claiming that probable cause existed for the arrests and that they had qualified immunity. On March 4, 1994, the court granted the individ-

---

1. The arrests were effectuated by the officer defendants: Scott Tamasaka ("Tamasaka"), Spencer Parker ("Parker"), Vincent Domingcil ("Domingcil"), Dawnelyn Lavarias ("Lavarias"), Carmen Abelira ("Abelira"), George Faris ("Faris"), Mark Thompson ("Thompson"), Jason Kawabata ("Kawabata"), and Robert Steiner ("Steiner"). On January 19, 1994 Tamasaka, Domingcil, Abe-

lira and Faris were voluntarily dismissed from the law suit.

2. (1) On September 22, 1991 by Parker
   (2) On February 25, 1992 by Lavarias
   (3) On August 13, 1992 by Thompson
   (4) On November 7, 1992 by Kawabata
   (5) On December 19, 1992 by Steiner

ual defendants' motion for summary judgment as to plaintiff's § 1983 claims on qualified immunity grounds. *See* Order Granting City's and Nakamura's Motion for Summary Judgment, Granting in Part and Denying in Part Officer Defendants' motion for Summary Judgment and Denying Plaintiff's Cross Motion for Summary Judgment, Civ. no. 93–00012 HMF (D.Haw. Mar. 4, 1994) (the "Order"). Since the court found the officer defendants immune from liability under § 1983, the court specifically declined to address the issue of probable cause, noting only that none of defendants' citations supported their assertion that the officer defendants had probable cause to arrest Sunn. *See* Order at 9–10. The court also denied defendants' motion for summary judgment on plaintiff's common law false arrest claims. *Id.* at 10. Since the City did not move for summary judgment, the Order left open plaintiff's claims against the City for liability under § 1983.

The City now moves for summary judgment claiming that the City cannot be liable under § 1983 as a matter of law because the officer defendants were found immune from liability. The City also renews its arguments that probable cause existed for the arrest. Finally, in its reply memorandum, the City argues that Sunn has failed as a matter of law to satisfy the requirements for municipal liability.

## STANDARD OF REVIEW

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

"... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548,

2553, 91 L.Ed.2d 265 (1986)). The movant need not advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

■ If the moving party meets its burden, then the opposing party must come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *T.W. Elec.,* 809 F.2d at 630. The opposing party cannot stand on the pleadings nor simply assert that it will discredit the movant's evidence at trial. *Id.* "If the factual context makes the [opposing] party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch. Bldg. Prods. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The standard for summary judgment reflects the standard governing a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.*

## DISCUSSION

■ An award of damages against a municipal corporation based on the actions of one of its police officers is not authorized if the officer has inflicted no constitutional harm. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). In *Heller,* a jury was instructed that the plaintiff would make out his constitutional claim if he were arrested without reasonable cause or with unreasonable force. *Id.,* 475 U.S. at 797, 106 S.Ct. at 1572. The jury was *not* instructed on any affirmative defense that might have been asserted by the police officer nor were they given instructions on qualified immunity. *Id.*

The jury exonerated the police department, and the Supreme Court upheld the district court's dismissal of the action against the municipality, concluding that the municipality could not be liable if plaintiff had not suffered any constitutional harm.

In the present case, the officer defendants were not exonerated from liability. Rather, the officer defendants successfully asserted qualified immunity. The court did not find that the officer defendants had probable cause to arrest Sunn and the language of the Order in no way exonerates the officer defendants.

There is no Ninth Circuit case law on the applicability of *Heller* to this particular situation. However, the circuits which have considered the issue have held that *Heller* is inapplicable to cases where police officers are exempt from suit on qualified immunity grounds. *Doe v. Sullivan County, Tenn.,* 956 F.2d 545, 554 (6th Cir.1992); *Barber v. City of Salem Ohio,* 953 F.2d 232 (6th Cir. 1992); *Parrish v. Luckie,* 963 F.2d 201, 207 (8th Cir.1992); *Medina v. Denver,* 960 F.2d 1493, 1499–1500 (10th Cir.1992).

In *Doe,* the Sixth Circuit reasoned that dismissal of claims based on qualified immunity did not necessarily imply that the plaintiff had suffered no constitutional deprivation and only implied that officers could reasonably have believed that their conduct did not violate clearly established law. *Doe,* 956 F.2d at 554. Accordingly, dismissal of a claim against an officer asserting qualified immunity in no way logically entails that the plaintiff suffered no constitutional deprivation, nor correspondingly, that a municipality—which is not entitled to qualified immunity—may not be liable for that deprivation. *Id.; Medina,* 960 F.2d at 1499; *see also Todd,* 963 F.2d at 207 (*Heller* inapplicable if plaintiff's constitutional rights were violated). At most, it means that an officer in the defendant's position could reasonably have believed that the conduct in question did not violate the law that was clearly established at the time. *Id.* A municipality may nonetheless be liable if the actions complained of rises to the level of a constitutional violation in light of present law. *Barber,* 953 F.2d at 237. Absent any Ninth Circuit case law on

point, the court will follow the well reasoned decisions of other circuits in holding that *Heller* is inapplicable to cases where police officers are exempt from liability on the basis of qualified immunity.

In the present case, the officer defendants were exempt from liability because the court found that they satisfied the requirements of qualified immunity—the court found that a reasonable police officer could have reasonably believed that his or her conduct was lawful in light of clearly established law and the information they possessed at the time. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Act Up!/Portland v. Bagley,* 988 F.2d 868, 872–873 (9th Cir.1993); *Palmer v. Sanderson,* 9 F.3d 1433, 1436 (9th Cir.1993). The officer defendants were not exonerated, nor did the court find that plaintiff did not suffer any constitutional deprivation—the officer defendants were found to be immune from suit and the merits of plaintiffs claims were never reached. *See Act Up!/Portland,* 988 F.2d 868, 872 (9th Cir.1993) (qualified immunity is immunity from suit rather than a mere defense to liability) (citations omitted). Accordingly, *Heller* is inapplicable to the facts of the present case and the City may nonetheless be liable if the actions complained of rise to the level of a constitutional violation in light of present law. Whether in fact such a constitutional violation occurred is a question for the trier of fact as to the merits of the claim. *Act Up!/Portland,* 988 F.2d at 872.

The City argues that it is nonetheless entitled to summary judgment for two reasons: (1) the officer defendants had probable cause to arrest Sunn and thus, as a matter of law, no constitutional violation occurred, and (2) Sunn is unable to make out a prima facie case of municipal liability.

The City's probable cause argument takes two forms, both are without merit. First, the City believes that from the following statement in the court's Order it has satisfied the requirements for probable cause: "[b]ased on the ... [peddling ordinance], a reasonable police officer might believe that plaintiff was engaged in peddling and thus reasonably believe that he had probable

cause to arrest." *See* Order at 8. The City seems to have confused the legal requirement for qualified immunity with that for probable cause—the proceeding statement satisfies the requirements for qualified immunity but not those for probable cause.

■ The issue of qualified immunity is a question of law. *Thorsted v. Kelly,* 858 F.2d 571, 575 (9th Cir.1988). The doctrine of qualified immunity does not require that probable cause to arrest exist. *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1443 (9th Cir. 1991). Qualified immunity requires that in light of clearly established principles governing the conduct in question, the officer objectively could have believed his conduct was lawful. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Act Up!/Portland v. Bagley,* 988 F.2d 868, 872–873 (9th Cir.1993); *Palmer v. Sanderson,* 9 F.3d 1433, 1436 (9th Cir.1993). In the present case, qualified immunity exists if the officer defendants reasonably believed that they had probable cause to arrest, even if they were mistaken and did not actually have probable cause to arrest. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40. If they were mistaken and there was no probable cause to arrest, Sunn's constitutional rights may have been violated even if the officer defendants are immune from suit.

■ By contrast, the test for probable cause is whether the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, to believe, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense. *United States v. Greene,* 783 F.2d 1364, 1367 (9th Cir.1986) (citations omitted). In a § 1983 action, the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the trier of fact. *McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir.1984) (citations omitted). Accordingly, in the present case, whether or not probable cause to arrest actually existed, and hence whether there was any constitutional violation, is a question for the trier of fact.

■ Second, the City argues that even if the officers did not have probable cause to arrest under the peddling ordinance, Revised Ordinances of Honolulu § 29–6.2, the police officers had probable cause to arrest under a different though closely related ordinance— the disorderly conduct statute, Haw.Rev. Stat. § 711–1101.[3] If probable cause to arrest exists to a different though closely related ordinance, the arrest is valid even if there is no probable cause under the first ordinance. *State v. Vance,* 61 Haw. 291, 297, 602 P.2d 933 (1979). However, whether or not probable cause exists under the disorderly conduct statute also rests on a determination of reasonableness that is a question of fact. There are material issues of fact as to the reasonableness of the officer defendants' belief that Sunn violated any ordinance that prevents the court from determining the existence of probable cause.

■ The City also argues that, even if Sunn can establish a constitutional violation, he cannot make out a prima facia case of municipal liability.

■ A municipality cannot be held liable merely for employing a tortfeasor. *Collins v. City of Harker Heights, Tex.,* —— U.S. ——, ——, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992) (citations omitted). A municipality is liable when the execution of a governmental policy or custom inflicts the injury.

3. Haw.Rev.Stat. § 711–1101 states, in pertinent part:
Disorderly Conduct. (1) a person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he:
(a) engages in fighting or threatening, or in violent or tumultuous behavior; or
(b) makes unreasonable noise; or
(c) makes an offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provide a violent response; or
(d) creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit; or
(e) impedes or obstructs, for the purpose of begging or soliciting alms, any person in any public place or in any public place open to the public.

*Id.; Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). This court has previously held that to determine whether liability should attach to the municipality for a constitutionally violative arrest, the court must determine whether such arrest was (1) the direct result of inadequate police training or supervision; (2) the product of an officially adopted policy statement, ordinance, regulation, or decision; or (3) illustrative of a custom which is so permanent and well settled to constitute a custom or usage with the force of law. *Tokuhama v. City and County of Honolulu,* 751 F.Supp. 1385, 1389 (D.Haw. 1989). A single incident of unconstitutional action by a non-policymaking employee is insufficient to prove a municipal policy or custom. *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233–34 (9th Cir.1989) (citations omitted).

In the present case, Sunn was arrested nine times under the peddling ordinance. Regarding those arrests, the state court found the ordinance inapplicable to Sunn's activity. A reasonable trier of fact could conclude that, in repeatedly ignoring the state court's interpretation of the peddling ordinance, the City engaged in a policy or practice of violating the rights of street musicians like Sunn. The trier of fact could also conclude that such blindness constituted deliberate indifference and inadequate supervision on the part of the City. *Davis,* 869 F.2d at 1235 (to prevail on an inadequate supervision claim, plaintiff must show deliberate indifference). Accordingly, the court DENIES the City's motion for summary judgment.

## CONCLUSION

For the reasons given, the court DENIES the City's motion for summary judgment.

IT IS SO ORDERED.