# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 97-3969/98-1126

_____

John Doe, Jr., by and through     *
his next friend John Doe, Sr.,     *
    *
       Appellee,     *
    *
    v.     *
    *
Washington County,     *
    *
       Appellant,     *
    *
Kenneth McKee, Individually and     *
in his official capacity as Sheriff     *    Appeals from the United States
of Washington County, Arkansas;     *    District Court for the
Bill Wolber, Individually and in     *    Western District of Arkansas.
his official capacity as a deputy     *
with the Washington County     *
Sheriff's Office and as a jailer for     *
the Washington County Detention     *
Facility; Timothy Jacobs,     *
Individually and in his official     *
capacity as a deputy with the     *
Washington County Sheriff's     *
Office and as a jailer for the     *
Washington County Detention     *
Facility,     *
    *
       Defendants.     *

_____

Submitted: May 12, 1998
Filed: July 30, 1998
_____

Before BEAM and MURPHY, Circuit Judges, and MELLOY, District Judge,[1]
_____

BEAM, Circuit Judge.

John Doe, Jr., a juvenile, sued Washington County, Arkansas, after he was beaten, raped, and tortured by other juvenile detainees while being held in the Washington County Detention Center. He brought this action pursuant to 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment. The jury returned a verdict against the county, which appeals. We affirm.

## I.    BACKGROUND

In 1996, when he was fifteen years old, Doe was detained pending trial at the Washington County Detention Center (the jail). He was placed with four other juvenile detainees in cell 239, a short-term holding cell of about 200 square feet. He remained in that cell, for the most part, from April 26 to May 16. On or about May 11, a "towel-popping" fight among the cellmates turned dangerously rough. Doe banged on the door to summon help. A guard responded and escorted him to a different cell. However, approximately one hour later, despite Doe's protests, another guard moved him back into cell 239, telling the other detainees that Doe was a "snitch," and that they should "handle it."

Over the ensuing four- or five-day period, Doe's cellmates subjected him to unrelenting abuse, torture, and humiliation. Among other things, they raped him and

_____

[1]The Honorable Michael J. Melloy, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

beat him with weapons such as a hand-made "club" and a plastic milk crate. They squeezed orange juice in his eyes, poured salt in his wounds, and cut his arm and forced him to suck the blood from the laceration.

Doe sued Washington County and several county officials, alleging, inter alia, that the failure to protect him from these assaults violated his right to substantive due process secured by the Fourteenth Amendment. The individual defendants, Kenneth McKee, Bill Wolber, and Timothy Jacobs, were ultimately dismissed without prejudice. The case proceeded to trial against the county and Sheriff McKee in his official capacity. A jury found that the county was liable for Doe's injuries, but awarded no damages. The district court granted a new trial on the issue of damages, and the second jury awarded $8,000 in compensatory damages. The district court also awarded Doe attorneys' fees and costs in the amount of $34,824.92. The county appeals.

## II.    DISCUSSION

### A.    Liability of Washington County

The jury found that by failing to protect him from assault at the hands of other detainees, the county violated Doe's constitutional rights. The county argues that the evidence was insufficient as a matter of law to support the jury's verdict of liability. We review a claim of insufficiency of the evidence to determine whether, viewing all the evidence in the light most favorable to the verdict, no reasonable juror could have returned that verdict. See Newhouse v. McCormick & Co., Inc., 110 F.3d 635, 639 (8th Cir. 1997).

Although it is not entirely coherent, the county's argument on appeal seems to be that the evidence would not support a finding of individual liability against Sheriff McKee or other municipal personnel. This argument is irrelevant, because the jury

rendered a verdict against the county, not against any jail officials or guards individually. A governmental entity can be liable under section 1983 even though no government official was found personally liable. See Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir. 1992) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 484-85 (1986)). Municipal liability under section 1983 is appropriate in cases where a municipal "policy" or "custom" causes the constitutional violation. See Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). We are therefore concerned with whether the county's acknowledged policies regarding the housing of juvenile detainees in the county jail can properly be found to have caused any violation of Doe's constitutional rights.

At issue here is Doe's Fourteenth Amendment right to due process of law. When these incidents occurred, Doe was a pretrial detainee and not a prisoner being punished for having committed a crime. The government cannot inflict punishment, as contemplated by the Eighth Amendment, "'until after it has secured a formal adjudication of guilt in accordance with due process of law.'" City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)). Therefore, Doe's failure to protect claim arises under the Due Process Clause of the Fourteenth Amendment and not the Cruel and Unusual Punishment Clause of the Eighth Amendment. See A.J. v. Kierst, 56 F.3d 849, 854 (8th Cir. 1995) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)). The Supreme Court has not yet defined the contours of the state's due process obligation to pretrial detainees. This case does not require us to do so either, because the due process rights of a pretrial detainee are at least as great as the Eighth Amendment rights of a convicted prisoner. See City of Revere, 463 U.S. at 244.

In order to make out an Eighth Amendment claim for failure to prevent harm from inmate attack, a prisoner must prove that government or its officials were deliberately indifferent to a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). The county contends that this would necessarily entail a

showing that county officials were aware of a risk to Doe, as distinct from other juvenile detainees. The county is mistaken. For purposes of the Eighth Amendment, "it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Id. at 843. Doe did not claim that he was more likely to be assaulted than any other juvenile detainee at the jail, but that is not fatal to his constitutional claim. Reasonable jurors could properly have concluded that all juveniles in Doe's situation faced a substantial risk of serious harm.

The county also argues that no reasonable juror could have found subjective knowledge of the risk of harm, as is required to make out an Eighth Amendment claim against an individual defendant. See id. at 837. The county, however, is not an individual defendant, and the Court has not directly addressed the question of how Monell's standard for municipal liability meshes with Farmer's requirement of subjective knowledge.[2] Clearly, this is not an appropriate case for us to decide that question. Whatever the standard may be, the evidence nonetheless adequately establishes subjective knowledge on the part of Sheriff McKee, who, in his own testimony, acknowledged the dangers of housing five juveniles together in a 200-square-foot, short-term holding cell for months at a time.

Doe presented evidence that during his detention, the county jail was extremely overcrowded. Guards apparently had to return Doe to cell 239 only one hour after he had requested their protection. When Doe complained that he was afraid to go back, he was told that the space was needed to hold newly arriving females. The jury may

---

[2]We are mindful of the court's statement in Farmer that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official." Farmer, 511 U.S. at 841. The statement did not, however, directly address the relevant question.

have concluded that the overcrowded conditions contributed to Doe's inability to remain safely away from his attackers in cell 239 on the day of the towel fight.

Furthermore, the evidence showed that the county had a policy of accepting additional prisoners transferred from state prison, known as "309 trusties." These prisoners served food, washed dishes, performed custodial services, and the like, and the county was paid by the state to house them in the county facility. The 309 trusty program saved the county an estimated $400,000 in 1996. Sheriff McKee testified that the juveniles probably should have been locked down in individual cells to "protect[] [them] from each other," but that due to the overcrowding, they were not. According to McKee, "You could fill the place with preachers and you'd have problems if you get them in there stacked heavy enough like we're doing."

The jury could easily have found that the trusty program contributed to the severe overcrowding, and that Sheriff McKee, as a county policy-maker, knew of the risk to which juvenile detainees were thereby subjected, but that he did not reasonably respond with corrective action. Our review of the record satisfies us that there was more than enough evidence to convince a reasonable juror of a constitutional violation.

## B.    Inconsistency of the Verdict

The jury found liability on the part of the county, but not on the part of the sheriff in his official capacity. The county correctly asserts that the jury's verdict is inconsistent in this respect. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. See Parrish, 963 F.2d at 203 n.1 (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). The official is distinct only in his individual capacity. Therefore, the county claims the finding that the sheriff was not liable in his official capacity somehow exonerates the county by implication. We do not agree.

Naming both the sheriff and the county as defendants was merely duplicative. The jury found that the county was liable, and, as explained in Part A above, there was overwhelming evidence to support that verdict. The inconsistency is likely a result of the jury's mistaken belief that Sheriff McKee was a defendant in his individual capacity. After reviewing the record, it is clear to us why the jury was confused about the sheriff's status as a defendant in this case.

Throughout the trial, defense lawyers behaved as though they misunderstood the "official capacity" designation. In closing, for example, defense counsel argued to the jury, "for you to find against Sheriff McKee, you must find that he knew that [Doe] was about to be hit, struck, raped or otherwise attacked." The defense's entire trial strategy followed along the same lines. If the jury was misled, it was primarily the result of defense counsel's conduct. We will not allow the county to reap any benefit from an inconsistency it was instrumental in creating. See Parrish, 963 F.2d at 207.

In any event, the county waived the claim of inconsistent verdicts by failing to object to the inconsistency before judgment was entered. "If a party feels that a jury verdict is inconsistent, it must object to the asserted inconsistency and move for resubmission of the inconsistent verdict before the jury is discharged or the party's right to seek a new trial is waived." Id. Therefore, we reject the county's claim regarding the inconsistent verdicts.

## C.    Prison Litigation Reform Act

The county contends that the district court erred in concluding that certain provisions of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, did not apply to limit the award of attorneys' fees to Doe. These provisions apply to a "prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). The statute defines "prisoner" as "any person incarcerated or detained." 42 U.S.C. § 1997e(h). When he filed this complaint, Doe was neither incarcerated nor

detained in any jail, prison, or correctional facility. The PLRA unambiguously applies to only those suits filed by prisoners. Doe was not a prisoner, and the PLRA therefore does not apply to his case.

We are not persuaded by the county's argument that the PLRA should apply to all suits that arise in prison. The policy behind the PLRA was to deter suits by inmates who are very quick to litigate "simply because they have little to lose and everything to gain." 141 Con. Rec. S7524 (daily ed. May 25, 1995) (statement of Sen. Dole). The PLRA was designed to discourage the initiation of litigation by a certain class of individuals—prisoners—that is otherwise motivated to bring "frivolous complaints as a means of gaining a short sabbatical in the nearest Federal courthouse." 141 Con. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl). Congress therefore fully intended to distinguish between those who are "prisoners" when they decide whether to file a complaint and those who are not. Because Doe was not a prisoner when he filed this case, we find that the provisions of the PLRA are inapplicable.

We have reviewed the other issues raised by the county, including the claim that the district court erred in granting a new trial on damages, and we find them to be without merit. Accordingly, we affirm the district court.

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-