# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3595

_____

| | | |
|---|---|---|
| Joyce Hott, as Trustee of the Estate of Decedent Philip E. Hott, for herself individually, and for all heirs, | * * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| Hennepin County, Minnesota; David Fahland; Gerhard Rieder; Does, I-X, | * * * * | |
| Appellees. | * | |

_____

Submitted: June 14, 2001

Filed: August 14, 2001

_____

Before WOLLMAN, Chief Judge, HEANEY, and MURPHY, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Joyce Hott, plaintiff, appeals from the district court's adverse grant of summary judgment in her suit for damages stemming from the suicide of her son during his pre-trial detention at the Hennepin County Adult Detention Center (ADC). We affirm in part and reverse and remand in part.

## I.

The body of Philip Edward Hott (Hott) was discovered by a deputy in his cell at the ADC shortly after 5:30 a.m. on January 21, 1996. Hott had constructed a noose from torn bed sheets and hanged himself from the guard rail on the unoccupied top bunk. A second broken bed-sheet noose was found in the toilet in his cell. At the time of the suicide, Hott was eighteen years old and had been detained in the ADC for approximately forty-five days while awaiting trial on charges stemming from a theft.

During the ADC's routine intake procedures on December 6, 1995, a deputy screened Hott for medical and psychiatric problems. The screening form indicates that Hott denied having suicidal inclinations or indicators, but complained of back and neck pain from a recent car accident. The injuries were treated with Advil and Tylenol throughout his detention. Because of his slight build--he stood five feet eleven inches and weighed one hundred twenty pounds--Hott indicated on intake that he had been bullied by other inmates in the past, and he was thus classified as vulnerable. Because of this classification, Hott was housed without a cellmate in the special needs portion of the ADC.

An ADC nurse conducted a detailed health assessment on December 28, 1995. The assessment, which relied entirely on Hott's self-reporting and the nurse's immediate observations, once again did not indicate that Hott had an increased risk for suicide. In fact, two years earlier, medical personnel at a county hospital had documented that Hott had attempted suicide and was at an increased risk for subsequent attempts, and that he suffered from hypomania and bipolar personality disorder. Hott did not advise the ADC about the existence of the medical records or authorize ADC personnel to obtain any of his medical records, and the ADC did not attempt to determine whether any county facility was in possession of any of Hott's medical records.

Hott did little to attract attention to himself during his stay at the ADC. According to the affidavit of a former inmate, Hott occasionally discussed suicide with other inmates and from time to time circled his hands around his neck at such length and with sufficient force so as to leave red marks, this not only in his cell but also in the presence of the guards. In the week preceding his death, additional criminal charges were filed against Hott. On January 20, Hott played cards and talked with other prisoners during the day. Around 10:30 p.m., he obtained special permission to telephone his girlfriend, Christine Dick, and check on the health of their infant son, who was suffering from an ear infection. Around 11:15 p.m., other inmates observed Hott moving around in his cell, possibly doing push-ups.

Deputy Gerhard Rieder was responsible for the special needs section of the ADC that night, and his log reflects that he complied with the ADC policy of conducting checks on the inmates at approximately half-hour intervals. The last check is logged at 5:48 a.m. and states that "all appears ok."[1] Viewed in the light most favorable to the plaintiff, the evidence reveals that at 5:37 a.m. Rieder turned on the lights, discovered Hott's body, sounded an alarm, and summoned assistance.

The medical examiner concluded that Hott had likely been dead for a period of hours before his body was discovered. Accordingly, Hott was lying dead in a seated position at the foot of his bed during a period when Rieder repeatedly noted in the ADC's logs that he had performed health and well-being checks and seen nothing amiss. Notwithstanding Rieder's notations in the logs, several ADC inmates maintain that the checks were not regularly conducted.

---

[1]The hand-written notation is subject to differing interpretations. As did the district court, we read it for the purposes of ruling on the summary judgment motion as saying "05:48."

Plaintiff, as trustee of Hott's estate, brought an action against Hennepin County, Rieder, and Rieder's supervisor David Fahland (collectively, the defendants). She asserted claims of negligence under Minnesota state law and for violations of Hott's Fourteenth and Eighth Amendment rights. The district court granted summary judgment in favor of the defendants on all of the claims.

## II.

On appeal, the plaintiff raises three arguments. First, she argues that Hennepin County violated Hott's constitutional rights when it failed to ascertain that Hott posed an increased risk of suicide. Second, she contends that Rieder's failure to conduct required cell checks intervals amounted to deliberate indifference in violation of Hott's rights under the Fourteenth Amendment. Third, she argues that the defendants are liable under Minnesota tort law for negligent failure to protect the safety of its inmates.

We review a grant of summary judgment de novo, applying the same standard as the district court: whether the record, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Rabushka v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997). In this case, the plaintiff, as the non-moving party, is entitled to the benefit of all reasonable inferences that may be drawn from the record. See Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980).

### A. Section 1983 Claims

A claim under § 1983 must allege that conduct of a defendant acting under color of state law deprived a plaintiff of a right, privilege, or immunity secured by the constitution or the laws of the United States. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). The plaintiff's complaint asserted constitutional claims for deprivation of Hott's rights under the Eighth and Fourteenth Amendments based both on the ADC's

-4-

failure to ascertain that Hott posed an increased suicide risk and on Rieder's failure to perform checks at staggered thirty-minute intervals as required by ADC policy.

Hott's status as a pre-trial detainee placed him outside the protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners. Bell v. Stigers, 937 F.2d 1340, 1342 n.4 (8th Cir. 1991). The Fourteenth Amendment guarantees pre-trial detainees at least as many protections as does the Eighth Amendment, however, and extends to them as well protection from deprivations that are intended to punish. Id. (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)).

**1. The ADC's Failure to Identify Hott as a Suicide Risk**

We have generally treated allegations that officials failed to prevent jail suicides as claims for failure to provide adequate medical treatment. See, e.g., Williams v. Kelso, 201 F.3d 1060, 1065 (8th Cir. 2000) (affirming summary judgment because plaintiff failed to show that prison officials deliberately disregarded serious medical needs of which they were aware); Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) ("[O]nce one is classified as a suicide risk, the right to be protected from that risk would seem to fall under the ambit of the right to have medical needs addressed."); Stigers, 937 F.2d at 1343 (inmate suicides analyzed as the jailer's failure to provide appropriate medical care). In such cases, the burden is on the plaintiff to show that (1) he suffered from a serious medical need and (2) the prison officials actually knew of his need, but deliberately failed to meet it. Williams, 201 F.3d at 1064. The inadequate medical care analysis focuses on the particular risk of suicide posed by the specific prisoner, rather than on the generalized threat of suicide among the population of prisoners as a whole. See, e.g., id. at 1064-66.

The plaintiff contends that the ADC violated Hott's Eighth Amendment rights when it failed to identify him as being at an increased suicide risk. She argues that

because  medical records reflecting Hott's suicidal tendencies were in the possession of a county facility, the ADC denied Hott access to necessary medical care by not obtaining the records and classifying him accordingly.[2]   She contends that the ADC had an obligation to investigate Hott's mental condition because of his habit of making strangling gestures.  Further, she contends that the additional charges brought against him just before his suicide, his request for a late-night phone call to Christine Dick, and his "glum" demeanor on the night of his suicide should have put the prison on notice that Hott was at an increased risk for suicide.

The district court rejected this argument, and we have little to add to its analysis. The plaintiff has offered no authority for the proposition that prisons have a constitutional duty to obtain personal medical records from outside the prison.  Nor do we find persuasive plaintiff's argument that a county jail has an Eighth Amendment obligation to obtain medical records from any county hospital in which its inmates have received past medical treatment.  Assuming, for summary judgment purposes, that Hott was placing his hands around his neck as an allusion to hanging himself rather than because he was experiencing continuing neck pain from his auto accident, there is no evidence that any ADC personnel interpreted his gestures as a suicide threat.   Hott's request for a late-night phone call was reasonably explained as a desire to check on the health of his infant son.  Even if Hott was visibly "glum," we agree with the district court that something more than an inmate's gloomy affect is required to trigger a duty to inquire whether he is feeling suicidal.  In short, there is no evidence to indicate that the ADC or its employees had actual knowledge that Hott posed a serious risk of harm to himself.  In the absence of such evidence, the plaintiff cannot show that ADC

---

[2]The plaintiff further argues that a nearly-illegible scrawl on Hott's intake form reads "get records," indicating that his medical records were to be obtained from the county facility.  We have reviewed the form, and we agree with the district court's view that the scrawl is not susceptible to this reading or to any other that advances the plaintiff's cause.

personnel were subjectively deliberately indifferent to his need for medical care.  See Stigers, 937 F.2d at 1344-45.

## 2. Deputy Rieder's Failure to Conduct Cell Checks

In addition to requiring that prisoners' specific medical problems be treated, the Eighth Amendment also imposes upon jailors an obligation to protect inmates from more generalized harms such as assault by other inmates.  See, e.g., Doe v. Washington County, 150 F.3d 920, 922-23 (8th Cir. 1998) (county liable for failure to prevent inmate attack); Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996) (county could be liable on basis of double-celling policies if they posed substantial risk of serious harm).  In order to make out a § 1983 claim based on that obligation, the plaintiff must prove that the ADC or its officials were deliberately indifferent to a substantial risk of serious harm.  Washington County, 150 F.3d at 923.  Unlike inadequate medical care claims, for the purposes of failure to protect claims, "'it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 843 (1994)).

The plaintiff contends that Rieder's failure to conduct cell checks approximately every half hour constituted deliberate indifference to Hott's safety.  To the extent that this claim asserts that Rieder ought to have been aware that Hott faced a particularized increased risk of suicide, it fails for the same reasons that the inadequate medical care claims against the ADC fail, for there is no evidence that any ADC employee was aware of the existence of such a risk.  We must also consider, however, whether the plaintiff has produced evidence sufficient to allow her to proceed on the theory that Rieder's conduct amounted to deliberate indifference to the safety of the inmates in the special needs cell block in general, including the risk of suicide.

In support of her complaint, the plaintiff submitted the statement of an expert on jail policies. In response, the defendants submitted copies of the ADC's training materials, which indicate that prisoner suicide is a pervasive problem, that prisoners are at a greater risk of suicide than is the general population, and that ADC employees are advised of the risk of inmate suicide. The record also reflects that placing an inmate into a cell alone increases the likelihood of suicide. The ADC concedes that its policy requires that inmates in the special needs section of the prison be checked on more frequently than are other inmates. "Health and well-being checks" are to be conducted at approximately half-hour intervals. The time intervals between checks are to be varied, and guards are to back-track frequently in order to prevent inmates from timing their activities to avoid the checks. (The ADC also has a special area for inmates known to be suicidal, who are checked every fifteen minutes.) The ADC's policies and training materials, then, reflect its concern over the possibility of inmate suicide. Given these facts, we believe that a jury could reasonably draw an inference that Rieder was aware that among the purposes of the health and well-being checks were the goals of preventing, interrupting, or rescuing inmates from suicide attempts.

Summary judgment was therefore inappropriate if that inference would be sufficient to support a conclusion that Rieder was deliberately indifferent to a substantial risk to the safety of the inmates in the special needs section of the ADC. See Washington County, 150 F.3d at 923. Whether conduct constitutes deliberate indifference is a subjective, rather than an objective, determination. Farmer, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Thus, "it remains open to the officials to prove that they were unaware of even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so." Id. at 844. Moreover, once a substantial risk to inmate health or safety has been identified, a prison official is not liable for resultant inmate harm under § 1983 unless he failed to respond reasonably to the harm, because the Eighth Amendment only requires the

official to ensure inmates' reasonable safety. Id. at 844-45. "Whether one puts in it terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845.

That the harm of suicide is a serious one is a foregone conclusion; the question then is whether the general risk of suicide among inmates who are not known to be predisposed to suicide is substantial. In support of her argument that it is, the plaintiff cites Judge Goldberg's concurring opinion in a prison suicide case:

> Jailers and municipalities beware! Suicide is a real threat in the custodial environment. Showing some concern for those in custody, by taking limited steps to protect them, will not pass muster unless the strides taken to deal with the risk are calculated to work: Employing only meager measures that jailers and municipalities know or should know to be ineffectual amounts to deliberate indifference.

Rhyne v. Henderson County, 973 F.2d 386, 396 (5th Cir. 1992) (Goldberg, J., concurring; internal quotations omitted). Further, the plaintiff points to her expert's opinion that inmates are at a "high risk" of suicide and to ADC training materials, which state that "[i]nmate suicide is one of the most serious problems facing correctional facilities."

We conclude that the evidence adduced by the plaintiff is insufficient to support an inference that suicide amounts to such a substantial risk to general inmate safety that Rieder's failure to conduct checks according to ADC policy amounted to deliberate indifference to Hott's needs. See Jensen, 73 F.3d at 811 (no liability unless evidence supports finding that prison officials were subjectively aware of a substantial risk to inmate safety due to prison violence and double-celling). The only information that quantifies the actual risk of suicide is defendant Fahland's statement that within the fifteen years leading up to Hott's death, only one other inmate at the ADC had committed suicide. An ADC nurse testified that there were approximately two suicide

attempts per year. The record reflects that the ADC booked nearly 45,000 individuals in 1996. However tragic Hott's self-inflicted death, the record does not support a finding that Rieder's conduct violated Hott's constitutional rights. Accordingly, we affirm the grant of summary judgment on the § 1983 claim against Rieder.

## B. The State Law Negligence Claim

In addition to the § 1983 claims, the plaintiff also asserted claims for negligence under Minnesota state law based on Rieder's alleged failure to conduct cell checks as required by ADC policy. The district court characterized its decision to grant summary judgment on the negligence claims as presenting "a much closer question" than did the § 1983 claims. The court began its analysis with a determination that the plaintiff had raised a fact issue as to whether Deputy Rieder had breached a generalized duty to conduct inmate well-being checks in order to reduce the risk of suicide:

> Fact issues exist as to whether Rieder conducted any of the requierd health and welfare checks in Hott's cell block on the night of his death, and if he did so, whether he conducted those checks properly. Moreoever, the ADC's policies, the statements of plaintiff's expert, and other documents support a finding that it is standard practice in the corrections industry to conduct health and welfare checks for the purpose of addressing aggressive behaviors, detecting suicidal conduct, and otherwise assessing the needs of inmate populations.

The court concluded that, although the facts of the case did not support a conclusion that the ADC was negligent in failing to identify Hott as a suicide risk, "a more general duty to protect the entire inmate population from the risk of assault, suicide, or other injury appears to exist. It is this general duty that Rieder may have breached by failing to conduct the health and welfare checks required under ADC policy."

Nevertheless, the court granted summary judgment in favor of the defendants because it determined that the plaintiff had failed to make a showing that any failure to conduct checks on Rieder's part was the proximate cause of Hott's suicide.

> The medical examiner who investigated Hott's death stated unequivocally that he died within a period of approximately five minutes of hanging himself . . . .
>
> The Court agrees that a possibility exists that, had Rieder conducted appropriate health and welfare checks, he would have discovered Hott's suicide attempt in time to prevent his death. Nevertheless, given the medical examiner's findings, the evidence does not support a reasonable conclusion that it is more likely than not that this would have occurred. Rather, Rieder's possible role in furthering Hott's suicide attempt is too speculative to permit this claim to go forward.

With all due respect, we disagree with the court's conclusion. Under Minnesota law, the plaintiff's evidentiary burden on the issue of proximate cause in an action for negligence is to show that it is more likely than not that an act or omission was a substantial factor in bringing about the result. See Rullman v. Fisher, 371 N.W.2d 588, 590 (Minn. Ct. App. 1985). In Minnesota, a jailer has a duty to prevent inmate suicide. Sandborg v. Blue Earth County, 615 N.W.2d 61, 64 (Minn. 2000). Thus, in this case, the plaintiff is entitled to proceed at trial if her evidence is sufficient to support a jury finding that Rieder's breach of that duty was a proximate cause of Hott's death.

Although the record contains no evidence of the length of time Hott required to prepare for and carry out his act of self-destruction, we do not believe that a jury would be reduced to mere speculation as to whether Hott's activities (1) took longer than thirty minutes, (2) could have been hidden from Rieder's view even if he had been doing the checks, and (3) might not have been abandoned entirely if Hott had been aware that checks were being conducted according to ADC policy. The plaintiff's expert, and the defendants themselves, submitted evidence to the effect that staggered-

-11-

time checks are an effective means of both detecting and deterring inmate suicide attempts. That being the case, the defendants will not now be heard to argue, as they do, that as a matter of law the policy they adopted to prevent inmate suicides would more likely than not have failed to prevent Hott's suicide even if that policy been properly followed during the early morning hours of January 21, 1996. A jury may ultimately conclude that the evidentiary burden on causation has not been met, but the record is not so entirely one-sided as to require that the claim be determined against the plaintiff as a matter of law.

The record does not, however, contain any evidence to suggest that any negligence on Rieder's part was due to Hennepin County's failure to train or supervise him. If anything, the low incidence of inmate suicide at the ADC suggests quite the opposite conclusion, for it implies that ADC's policies and procedures are, on the whole, quite successful in preventing inmate suicide. Accordingly, we affirm the judgment of the district court with respect to the negligence claim against Hennepin County, but reverse and remand the case to the district court with respect to the negligence claim against Rieder.

The judgment is affirmed as to defendants Hennepin County and David Fahland and as to the § 1983 claim against Rieder. With respect to the state law negligence claim against Rieder, the judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.