THELMA D. and Dawn D., minors under 14, By and Through DELORES A.; Sherrie C., minor under 14, by and through Mary C.; Haley B., minor under 14, by and through Susan R.; Tracy H., minor under 14, by and through Patricia H.; Kim S., minor under 14, by and through Barbara S., Appellants,

v.

The BOARD OF EDUCATION OF the CITY OF ST. LOUIS, Appellee.

Jimmy Tansil.

No. 90–1903.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1990.

Decided May 29, 1991.

William Edward Taylor, St. Louis, Mo., for appellants.

Margaret M. Mooney, St. Louis, Mo., for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOODS,* District Judge.

BRIGHT, Senior Circuit Judge.

Appellants, six students who were sexually molested by their public school teacher, appeal the district court's[1] grant of summary judgment in favor of the Board of Education of the City of St. Louis (Board) in this civil rights action brought pursuant to 42 U.S.C. § 1983.[2] Appellants contend that the district court erred in ruling that five complaints of sexual abuse lodged against the teacher over the sixteen-year period prior to the incidents giving rise to their injuries did not establish the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct sufficient to establish that the Board had a custom of failing to receive, investigate and act upon such complaints. Additionally, appellants contend that the district court erred in ruling that the Board did not have notice of the previous complaints and that the Board therefore could not have exhibited the deliberate indifference neces-

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

2. The district court's decision is published as *Thelma D. v. Board of Education,* 737 F.Supp. 541 (E.D.Mo.1990).

sary to support a finding of liability under either a municipal custom or failure to train theory. We affirm.

## I. BACKGROUND

The underlying facts giving rise to this suit are not in dispute. In February 1986, St. Louis police arrested Jimmy Tansil, a teacher in the St. Louis public school system for over twenty years, on charges of sodomy and sexual abuse following allegations that he sexually abused several students at Meramec Elementary School in St. Louis. The superintendent of the St. Louis public schools, Dr. Jerome B. Jones, immediately removed Tansil from his teaching position upon learning of the charges. Jones also initiated administrative proceedings against Tansil for violating Board regulations prohibiting teachers from engaging in any form of sexual contact with students. Tansil waived his right to a hearing and resigned from his teaching position. He later received a sixteen-year sentence on his January 1987 conviction on the criminal charges.

In January 1989, six of the sexually abused students filed this action against the Board under 42 U.S.C. § 1983. They alleged that five previous complaints of sexual abuse lodged against Tansil in the sixteen years prior to the acts for which he was convicted manifested a pattern of unconstitutional misconduct and that the Board had a custom of failing to receive, investigate and act upon such complaints. They further alleged that the Board had a custom or policy of failing to train its school principals in investigating complaints of sexual abuse. According to appellants, the failure to train resulted in the principals failing to properly report sexual abuse complaints to the Board.

The first of the five complaints occurred in 1970, when a female student complained to school principal Sam Schaeffer that Tansil had fondled her. Schaeffer informed Tansil of the complaint. The matter ended with no further action after Tansil and Schaeffer met with the student and her mother.

In 1979, nine years after the first complaint, Schaeffer received a second, similar complaint. Schaeffer again discussed the allegation with Tansil and the matter proceeded no further. Assistant Principal Rudie Perry received a complaint from a second student in 1979 that Tansil had looked up her dress. Perry brought the complaint to the attention of Principal Schaeffer and Tansil. No evidence exists regarding Schaeffer's response to this complaint.

Four years later, in June 1983, Tansil's principal, Paul Kuhn, received a complaint from the grandmother of a student alleging that Tansil had inappropriately touched the student. Kuhn reported the complaint to his immediate supervisor, Dr. David Mahan, an assistant superintendent in the St. Louis public school system. Mahan instructed Kuhn to investigate the charge further. After speaking with other children present in the classroom at the time of the alleged incident, Kuhn concluded that the complaint lacked substance and did not warrant referral to the Missouri Division of Family Services Child Abuse Hotline pursuant to Board policy for handling substantiated complaints of sexual abuse.

Later in 1983, St. Louis police informed the office of a deputy school superintendent that it had arrested Tansil and charged him with misdemeanor sexual assault of a former student. The student never reported her allegation to any Board employee; thus, no administrative proceedings were instituted against Tansil. The school officials left the investigation and prosecution of the matter in the hands of the legal authorities. A jury ultimately acquitted Tansil of the charges.

Appellants did not allege that either the members of the Board or Superintendent Jones, who conducted the day-to-day operations of the school system, had knowledge of any of the above events prior to Tansil's arrest in February 1986 on the charges for which he was eventually convicted and which gave rise to the present action. The Board consequently filed a motion for summary judgment and submitted supporting affidavits from the Board members and Superintendent Jones denying any knowl-

edge of the previous complaints against Tansil. Appellants did not offer any evidence in contravention of the affidavits.

Applying this court's recent formulation of the standard for determining liability in § 1983 governmental custom cases, *Jane Doe "A" v. Special School Dist.*, 901 F.2d 642 (8th Cir.1990), the district court granted the Board's motion for summary judgment. The district court specifically concluded that Tansil's misconduct, as alleged, may have been unconstitutional, but that it did not comprise a "continuing, widespread, persistent pattern" necessary to give rise to Board liability. Noting appellants' failure to allege that the Board, the final policymaking authority, had notice of previous complaints against Tansil, the district court also held that, as a matter of law, the Board could not be deemed to have displayed deliberate indifference toward or tacit authorization of the misconduct. Thus, it granted the Board's motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

■ We review *de novo* a grant of summary judgment and apply the same standard as used by the district court. *See Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir.1989). Consequently, we view the evidence in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); Fed.R.Civ.P. 56(c). A defendant is entitled to summary judgment where the plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [plaintiff's] case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### B. Failure to Receive, Investigate and Act Upon Complaints

■ Appellants assert that the Board had a custom of failing to receive, investigate and act upon complaints of sexual misconduct of its employees. A local governmental entity, like the Board, may be found liable under § 1983 where an official custom causes an individual to suffer a constitutional harm. *Monell v. City Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The existence of a custom may be found in " 'persistent and widespread ... practices ... [which are] so permanent and well settled as to [have] the force of law.' " *Id.* at 691, 98 S.Ct. at 2036 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)).

We recently articulated the elements essential to state a § 1983 municipal custom claim in *Jane Doe "A" v. Special School District of St. Louis*, 901 F.2d 642 (8th Cir.1990). In *Jane Doe "A"*, parents of handicapped students who were sexually abused by a school bus driver employed by the school district brought a § 1983 action against the school district alleging that it had a custom of failing to adequately receive, investigate and act upon prior complaints of child abuse by the driver. In the three years prior to the incidents leading to the conviction of the driver, various school district employees had received complaints of abuse against the driver. As in the present case, the driver was convicted on criminal charges for the incidents giving rise to the civil suit.

■ In affirming the district court's dismissal of the plaintiffs' claims on a motion for summary judgment, we stated that to establish the existence of a governmental custom of failing to receive, investigate and act upon complaints of violations of constitutional rights, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconsti-

tutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Jane Doe "A"*, 901 F.2d at 646 (citing *Harris v. City of Pagedale*, 821 F.2d 499, 504–07 (8th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987)).

The *Jane Doe "A"* court held that because no school district official received more than two complaints, none of them had knowledge of a sufficient number of incidents to constitute notice of a pattern of unconstitutional behavior by the driver. In the absence of notice to the relevant policymaking authorities, the court stated that it could not, as a matter of law, attribute to the school district deliberate indifference towards the underlying unconstitutional misconduct.

The similarity of the underlying facts in, and the disposition of, *Jane Doe "A"* to those presented in the case now before us lead us to agree with the district court that *Jane Doe "A"* properly governs the disposition of the present case. Having reviewed the evidence, we conclude that no genuine issues of material fact exist. We therefore turn our attention to applying *Jane Doe "A"* to the facts of this case.

■ Turning to the first element of the *Jane Doe "A"* standard, we agree with the district court that the facts which appellants have alleged are not sufficient to establish a "continuing, widespread, persistent pattern of unconstitutional misconduct." Appellants allege five prior incidents of unconstitutional misconduct by Tansil occurring over a sixteen-year period. Hindsight lends an increased and ominous significance to these prior incidents. However, under the present circumstances, in a school system with over 4,000 employees, the five complaints scattered over sixteen

years cannot, as a matter of law, be said to comprise a persistent and widespread pattern of unconstitutional misconduct. Viewed from the time at which they occurred, the alleged incidents are relatively isolated and thus, under *Monell*, are insufficient to give rise to Board liability. Thus, appellants have failed to establish the first of the three *Jane Doe "A"* elements. *See Jane Doe "A"*, 901 F.2d at 646; *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

■ Although the lack of a pattern of unconstitutional misconduct effectively ends our inquiry, we also voice our agreement with the district court's conclusion that appellants have failed to allege sufficient facts or provide evidence that the Board had notice of Tansil's alleged unconstitutional misconduct. The parties appear to be in agreement for the purposes of this summary judgment motion that only the Board has final policymaking authority. 737 F.Supp. at 544. Yet appellants have failed to allege that either the Board members or Superintendent Jones had knowledge of any of the prior complaints against Tansil prior to his arrest for the incidents giving rise to this action. Similarly, appellants have failed to provide any evidence to contravene the affidavits of the Board members and the Superintendent expressly denying any such prior knowledge of the earlier complaints.

Appellants argue that the knowledge of the lower level school system officials is sufficient to impute constructive knowledge to the Board. Imputation of constructive knowledge requires a showing that the underlying unconstitutional misconduct was "so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of [it]." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.1987) (citing *Bennett v. Slidell*, 728 F.2d 762, 768 (5th Cir.1984) (en banc)), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Tansil's prior misconduct alone, as a matter of law, cannot be deemed to constitute widespread

misconduct. Imputing the knowledge of the lower level school system employees to the Board under the facts of the present case would, in effect, sanction *de facto respondeat superior* liability, a result which the Supreme Court expressly rejected in *Monell.* 436 U.S. at 693–94, 98 S.Ct. at 2037–38.

Without notice of the prior incidents, the Board, as a matter of law, cannot be said to have shown deliberate indifference towards Tansil's misconduct. Consequently, even if Tansil's conduct had comprised a pattern of unconstitutional misconduct, appellants still have failed to establish the second element necessary for a finding of Board liability. We therefore affirm the district court's grant of summary judgment as it relates to the claim of a Board custom of failing to receive, investigate and act upon complaints of unconstitutional misconduct.

### C. Failure to Train

Appellants also contend that the Board had a custom of failing to develop administrative policies or afford training for the detection and investigation of alleged incidents of child abuse. Appellants have implied that the Board may have shielded itself from liability by creating a buffer of nonpolicymaking employees who are not adequately trained to bring such complaints and misconduct to the attention of the Board. We reject appellants' claim, but not without some serious reservations.

■ To establish its failure to train theory, appellants must show that the Board's "failure to train its employees in a relevant respect evidences a 'deliberate indifference'" to the rights of the students. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Thus, appellants must establish that the Board had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. *See id.* at 396, 109 S.Ct. at 1208 (O'Connor, J., concurring); *Patzner v. Burkett,* 779 F.2d 1363, 1367 (8th Cir.1985).

■ Appellants may establish Board notice of a deficiency in its procedures in one of two ways. First, notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious. *Harris,* 489 U.S. at 390 & n. 10, 109 S.Ct. at 1205 n. 10. For example, in *Harris,* the Court noted that because police officers are armed by a municipality and the officers are certain to be required on occasion to use force in apprehending felons, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* at 390 n. 10, 109 S.Ct. at 1205 n. 10 (citation omitted).

■ In the present action, we need not decide whether the need to develop policies and employee training programs addressing child abuse falls into this first notice category because, appellants' contentions notwithstanding, the record clearly indicates that the Board has developed and implemented policies and procedures for handling complaints of sexual abuse. Under Board policy, school principals receiving complaints of sexual abuse are directed to conduct an immediate investigation into the matter. If a principal determines that a complaint has some basis, Board policy directs the principal to forward the complaint to the Missouri Division of Family Services for further investigation. The Board has implemented various programs to instruct principals on the reporting laws and procedures, and to train school employees in detecting and investigating incidents of child abuse. The Board's sensitivity to the constitutional rights of its students as they relate to incidents of child abuse is further reflected in its attempts to increase awareness among its students through instructional programs. Finally, the Board employs social workers trained in the detection and prevention of child abuse.

Appellants respond with the deposition of Principal Paul Kuhn in which he stated that he never received training. This evidence certainly raises some concern about the administration of the Board's policies, particularly in light of the fact that the

Board has charged its principals with the responsibility of investigating complaints and making a determination as to whether they merit further attention from the Missouri Division of Family Services and higher level school officials. However, the Supreme Court has counseled that the fact that "a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [governmental entity]." *Id.* at 390–91, 109 S.Ct. at 1205–06. The absence of training in any particular case, according to the Court, may arise merely from the possible negligent administration of an otherwise sound program. *Id.* at 391, 109 S.Ct. at 1206. Kuhn's deposition, therefore, is alone insufficient to support a § 1983 cause of action against the Board for having a policy or custom of failing to train its principals to address complaints of sexual abuse.

The second avenue for asserting a failure to train claim arises where the need for additional training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens. *Id.* at 397, 109 S.Ct. at 1209 (O'Connor, J., concurring). To establish deliberate indifference on such a claim, appellant must show that the Board had either actual or constructive notice of the inadequacy of its training program and failed to take remedial steps.

Appellants have provided no evidence that either Superintendent Jones or the members of the Board had notice of any inadequacy in its child abuse training programs and procedures. To the contrary, the evidence shows that the Board's child abuse procedures had been effective in an earlier incident involving a different teacher. The Board, on that occasion, received word from subordinate school system employees about allegations of sexual abuse by one of its teachers. The Board conducted a full investigation and hearing, and ultimately discharged the teacher.

As noted above, the evidence also shows that the Board did not know of the complaints against Tansil until after his arrest for the incidents giving rise to this action. Upon learning of Tansil's arrest for these incidents, Superintendent Jones acted immediately to remove Tansil from his teaching position and initiated administrative proceedings against Tansil for violating Board regulations.

Without any evidence of Board notice of possible shortcomings in its child abuse training programs and procedures, we must conclude, as a matter of law, that appellants have not sufficiently established deliberate indifference on the part of the Board. The Board simply cannot be said to have acquiesced in something of which they had no knowledge; consequently, we conclude that the district court properly granted the Board's motion for summary judgment and dismissed appellants' failure to train claims.

In holding that appellants have failed to sufficiently establish essential elements of their causes of action, we do not minimize the gravity of the injury suffered by six innocent school children and their families. The facts of this case highlight a troubling problem in the law. In order to more effectively protect the constitutional rights of its students, the Board must possess a greater knowledge and awareness of incidents involving misconduct by its employees. This greater knowledge, of course, requires the Board to take remedial action. However, such knowledge also subjects the Board to liability for displaying deliberate indifference should it fail to sufficiently remedy the problem.

Of course, we are bound to require appellants to establish that the Board had knowledge either of Tansil's unconstitutional misconduct or of inadequacies in its procedures for addressing child abuse in its schools. However, we have been presented with evidence of an administrative procedure for addressing child abuse which, however well-intentioned, appears at a minimum to allow only a limited amount of information to reach the Board. Appellants have submitted no evidence of impropriety or bad faith on the part of the Board in setting up its system in such a manner,

but this case clearly demonstrates the need for better lines of communication and an increased flow of information to the Board. A greater flow of information will require the Board to more quickly and vigorously act to address unconstitutional misconduct by its employees or else face § 1983 liability in the future.

The magnitude of the tragedy underlying this litigation compels us to sound a final cautionary note to the Board and other similarly situated public agencies. In the future, this court will closely scrutinize bureaucratic hierarchies which, in their operation, tend to insulate its policymaking officials from knowledge of events which may subject them to § 1983 liability. This case, in conjunction with *Jane Doe "A"*, compels us to provide clear warning to the Board that in the future a defense of no liability due to lack of knowledge may no longer apply to a bureaucracy which continues to block notice to the Board of allegations of sexual abuse of students committed by teachers and others during school related activities.

### III. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.