_____

No. 95-3917
_____

Kristi D. Andrews,                       *
                                          *
          Plaintiff-Appellant,            *   Appeal from the United States
                                          *   District Court for the
     v.                                   *   District of South Dakota.
                                          *
Randy Alan Fowler, individually *
and in his capacity as an          *
officer with the City of North  *
Sioux City, South Dakota,          *
                                            *
          Defendant,                     *
                                          *
Scott Price, individually and   *
in his capacity as former Chief *
of Police of the City of North  *
Sioux City, South Dakota Police *
Department; William C. Merrill, *
individually and in his capacity*
as Mayor of the City of North    *
Sioux City, South Dakota; City   *
of North Sioux City, South       *
Dakota,                                  *
                                          *
          Defendants-Appellees.    *


_____

Submitted:  June 13, 1996

Filed:  October 23, 1996
_____

Before HANSEN, ROSS, and JOHN R. GIBSON, Circuit Judges.
_____


HANSEN, Circuit Judge.

     Kristi Andrews brought this civil rights action, alleging causes of action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and state law, arising out of a sexual assault by Randy Fowler, a former police officer for the North Sioux City Police Department.

The district court granted summary judgment in favor of former Chief of Police Scott Price, Mayor William Merrill, and North Sioux City, South Dakota. In this appeal, Andrews contends that the district court erred in granting summary judgment, because (1) genuine issues of material fact exist on her § 1983 claim that these defendants failed to properly hire, train, and supervise Fowler and failed to act on or investigate complaints; (2) genuine issues of material fact exist on her § 1985(3) conspiracy claim; and (3) the district court erred in denying her request to take additional depositions. We affirm in part and reverse in part.

## I.

The record, viewed in the light most favorable to Andrews, supports the following set of facts. In the early morning hours of June 8, 1991, Andrews was raped by Randy Fowler, who was then a police officer for the North Sioux City Police Department. At the time, Andrews was a 17-year-old and had been drinking. She had recently graduated from high school and was preparing to enter basic training for the military.

Earlier the same evening, during a going-away party for Andrews at her home, police were called to the scene because of underage drinking and reports of several arguments at the party. Fowler took an interest in Andrews, which Chief of Police Scott Price noticed. After the police left the scene, Price called all three of his officers back to the police department where he warned them not to fraternize while on duty, especially not with minor females. Price was aware that the department had had trouble in the past with some officers fraternizing with and possibly even having sexual relations with minor females. Those officers had been discharged before Price became chief of police and before any of Price's officers had been hired. Price had, however, received numerous complaints that one of his officers had been stopping females for minor traffic violations or no violation at all, asking

them out on dates, and offering not to issue citations if they would agree to go on a date with or to provide their telephone number to the officer. Therefore, Price warned his officers to avoid such conduct.

Later on June 8, 1991, while Fowler was still on duty, he returned to Andrews' home on another call reporting a disturbance at the address. He invited Andrews into his police car. They drove away from Andrews' home and parked the police car in a spot where the two talked for some time. Fowler offered to take Andrews home when his shift was over. At that time, Fowler exchanged his police car for his personal vehicle, but instead of taking Andrews home, Fowler took her to an isolated area. There, he forced her to have sexual intercourse with him under threats that he would charge her with underage drinking and prevent her from being allowed into the military if she did not cooperate with his advances. Andrews told no one of the assault.

During the next few weeks, while Andrews was away at basic training, her mother, Dixie Anderson, began to hear rumors that Randy Fowler was bragging about having had sexual relations with Andrews and that he knew she had no tan lines. When her mother reported this to Andrews in a brief telephone conversation, Andrews replied, "I can't go into detail. Just press charges." (Appellant's App. at 39.) Dixie Anderson then went to Chief of Police Price, who had already heard the rumor of Fowler's boasts from another officer. Anderson informed Price that if there had been sexual relations between her daughter and Fowler, it was not consensual and she wanted to press charges. Price confronted Fowler with the accusation, and he denied having had any sexual relations with Andrews. Price did not investigate the incident further, and Anderson did not pursue the matter.

In early July, Fowler sexually assaulted another woman, Bonnie Bell, threatening to charge her with a crime if she did not

3

acquiesce to his sexual demands. Ms. Bell told Officer Greg Hanson about the incident but did not make a formal complaint. Officer Hanson told Chief Price about the incident, but Price did not investigate. Ultimately, on August 3, 1991, Price wrote up an evaluation of Fowler to present to the city council when he requested Fowler's termination. The evaluation included some reference to the Andrews incident, to reports that Fowler had been stopping young females and asking them out on dates instead of issuing citations, and to Fowler's dates with another 17-year-old girl against Price's orders. The evaluation also noted Fowler's lack of reliability, often failing to respond to radio requests for back-up help. Price presented a copy of the evaluation to the mayor and met with the mayor and the city council on August 5, 1991, to discuss terminating Fowler's employment. The city council immediately requested Fowler's resignation, and he complied.

Andrews' mother, Dixie Anderson, testified that she decided not to pursue the criminal prosecution of Fowler because she had heard of his discharge and assumed that there was nothing more she could do. Three years later, at the instigation of then Chief of Police Skip Ensley who investigated these matters, Fowler was prosecuted for raping Kristi Andrews. The Supreme Court of South Dakota recently affirmed Fowler's conviction of second-degree rape. State v. Fowler, 552 N.W.2d 92 (S.D. 1996). In another criminal case, Fowler was convicted of attempted second-degree rape, simple assault, and sexual contact all arising from his assault of Bonnie Bell, which occurred approximately one month after he raped Andrews. State v. Fowler, 552 N.W.2d 391 (S.D. 1996).

Andrews brought this civil rights suit against Fowler, Chief of Police Price, Mayor Merrill, and the city based on the incident. Andrews asserted a § 1983 cause of action based on Fowler's conduct and the other defendants' failure to properly hire, supervise, or train Fowler, as well as their failure to investigate complaints against him. Andrews asserted a § 1985(3) cause of action,

4

claiming that the defendants conspired to deprive her of her constitutional rights by covering up Fowler's misconduct.  Andrews also asserted South Dakota state law claims of assault and battery, intentional infliction of severe emotional distress, and negligence.

The district court granted summary judgment to Price, Merrill, and the city, concluding that there is no genuine issue of material fact on the § 1983 claims or on the § 1985(3) conspiracy claim.  As to the state law claims, the district court concluded that they are not available because Andrews did not comply with the statutory notice requirement.  See S.D. Codified Laws Ann. § 3-21-2 (1994).  The district court granted partial summary judgment in favor of Fowler, dismissing the § 1985(3) conspiracy claim and the state law assault and battery claim against him.  Trial against Fowler on the remaining claims is stayed pending final disposition of this appeal, in which Andrews challenges the grant of summary judgment in favor of Price, Merrill, and the city.

## II.

"We review the district court's grant of summary judgment de novo, applying the same standard as the district court and examining the record in the light most favorable to the nonmoving party."  Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996).  Summary judgment is appropriate when the record reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996).  See Fed. R. Civ. P. 56(c).  Summary judgment is also appropriate when the plaintiff has failed to make a sufficient showing of the existence of an essential element of her case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

5

## A.

Andrews first contends that the district court erred by granting summary judgment to Price, Merrill, and the city on her § 1983 claim.  On appeal, she contends that she has raised a material dispute of fact concerning whether these defendants failed to properly hire, train, and supervise Fowler or to investigate complaints against him.

## 1.

We begin with Andrews' arguments challenging the district court's grant of summary judgment to the city.

## a.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a theory of respondeat superior.  Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 694 (1978).  The city may be subject to § 1983 liability for failing to act on complaints of sexual misconduct by police department employees only if it had a "policy or custom" of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue.  Id.  There must exist a prior pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law.  Id. at 691; Thelma D. v. Board of Educ., 934 F.2d 929, 932-34 (8th Cir. 1991); Jane Doe A. v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645-46 (8th Cir. 1990).  "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Parrish v. Luckie, 963 F.2d 201, 204 (8th Cir. 1992).  See also Harris v. Pagedale, 821 F.2d 499, 504 (8th Cir.), cert. denied, 484 U.S. 986 (1987).

6

We agree with the district court's conclusion that Andrews failed to demonstrate a city policy or custom of failing to act on or investigate prior complaints of sexual abuse by police officers. The evidence demonstrates that prior to the time either Price or Fowler was on the police force, three officers had been asked to resign due to their relations with minor females in the community. In each of those prior instances, however, the mayor and city council members took immediate action to request the officer's resignation when informed of the officer's misconduct. Contrary to Andrews' contention, these instances are strong evidence that the city had a policy or custom of taking adequate remedial action to remove police officers accused of sexual misconduct with minors. Likewise, in this case, when Chief of Police Price brought Fowler's misconduct to the city council's attention and requested his termination, the council immediately acted to request Fowler's resignation.

Andrews contends that she raised a question of fact because testimony also indicated that council members, the mayor, and Price had heard rumors during Fowler's tenure that an officer had been harassing women by stopping them for minor traffic offenses or no offense at all and asking them on dates or for their telephone numbers. The offers to forgive citations were allegedly laden with sexual overtones. Some council members said that they passed such rumors on to Price and Mayor Merrill, although they could not say if they had passed on any information prior to Andrews' rape. Price admitted that he had heard the rumors, but he had not received any formal complaints, and he was not certain which officer was engaging in this conduct because none of the hearsay reports identified a particular officer. Consequently, Price placed Fowler and Officer Greg Hanson (who look quite a bit alike) in separate, differently colored cars in an attempt to determine the source of the improper conduct. This evidence does not indicate a city custom or policy of failing to act on prior complaints. Rather, it demonstrates that even in the face of mere

rumors, some remedial action was taken to try to identify the source. Furthermore, the evidence is uncontroverted that on the very night that Fowler raped Andrews, Price had specifically cautioned all of his officers to avoid fraternizing with minor females.

Andrews also presented evidence of two specific complaints against Fowler prior to her rape which she contends the city ignored. In May 1991, the father of a young woman named Angie Zortman filed a complaint against Fowler. Apparently, late one night while her parents were away from home, Fowler was found prowling around inside Zortman's home. He fled after encountering her younger sister. The next day, Zortman's father complained to Price about Fowler's behavior. The dispatch card indicates that Fowler went to the Zortman home around 1:30 a.m. on a complaint of loud noise and a party. Police records also indicate that Price was dispatched to the Zortman residence the following day in reference to Mr. Zortman's complaint. There is no evidence that Price took any disciplinary action against Fowler based on the incident.

Additionally, testimony indicates that in early June 1991, Michael Kougl made a complaint to Price about Fowler's conduct toward the female driver of a car in which he was a passenger. Fowler allegedly stopped the vehicle for a minor violation and suggested to the female driver in a manner laden with sexual overtones that he could take care of the ticket. Again, there is no evidence that Price took any disciplinary action against Fowler. In fact, Fowler's personnel file is missing, as are all records of complaints prior to May 1991.

These two instances of misconduct indicate that Chief of Police Price was aware that some problem existed with Fowler, but they do not indicate a "persistent and widespread" pattern of misconduct that amounts to a city custom or policy of overlooking

8

police misconduct.  <u>Monell</u>, 436 U.S. at 691.  Price's failure to take remedial action in these two instances simply is an insufficient basis on which to subject the city to liability.

The two specific prior complaints against Fowler and the various rumors that do not implicate a particular officer pale in comparison to the type of prior complaints that we have previously held supported a verdict against a city.  In <u>Parrish v. Luckie</u>, 963 F.2d at 204-05, the evidence of prior complaints indicated that the offending police officer had engaged in repeated acts of violence, had been charged with child abuse, and had repeatedly requested sexual favors, including oral sex, from convenience store clerks, all prior to the time he raped Parrish; furthermore, there was evidence that the police department had a policy of investigating only written complaints and that the department discouraged citizens from filing written complaints of physical or sexual assault by officers.  In <u>Harris v. City of Pagedale</u>, 821 F.2d at 501-03, the evidence of prior complaints was that the offending officer had fondled a young woman in a dark room at the police station, made deals with another woman (several times) that he would not charge her if she cooperated by going to a hotel room with him or allowing him to tie her up and photograph her nude, and offered to let a woman go free from drug charges in exchange for sex, to which she consented for fear of her life; there also had been complaints of violence and sexual assault by other police officers.

The prior complaints of physical or sexual assault in <u>Parrish</u> and <u>Harris</u> were quite similar to the type of officer misconduct that caused the constitutional deprivation actually suffered by the plaintiffs in those two cases.  <u>See</u> <u>Harris</u>, 821 F.2d at 508 (holding city liable where the "assault was similar to many other sexual violations committed by Officer Hayles and by other City police officers").  In this case, however, there is no evidence that the city ever had received, or had been deliberately

9

indifferent to, complaints of violence or sexual assault on the part of an officer prior to the time Fowler raped Kristi Andrews. Accordingly, we conclude that the district court did not err by granting summary judgment to the city on Andrews' failure to investigate the claim.

**b.**

A city also may be liable for deficient policies regarding hiring and training police officers where (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the "failure to train reflects a deliberate or conscious choice by a municipality," City of Canton v. Harris, 489 U.S. 378, 389 (1989); and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. See Larson By Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc); Benavides v. County of Wilson, 955 F.2d 968, 972 (5th Cir.), cert. denied, 506 U.S. 824 (1992). It is necessary to show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390. In other words, the plaintiff must demonstrate that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Thelma D., 934 F.2d at 934.

The training procedures for the North Sioux City Police Department consisted of approximately two weeks of on-the-job training with another officer, and officers were sent to the police academy for training within one year of when they were employed by the department. Those officers who did not pass the academy training were not retained. There is no reason to conclude that

10

this training is constitutionally deficient.  See <u>Williams-El v. Johnson</u>, 872 F.2d 224, 230 (8th Cir.) (finding training was adequate against a charge of excessive force and denial of medical care where the city provided on-the-job training and required attendance at the police academy), <u>cert.</u> <u>denied</u>, 493 U.S. 871 and 493 U.S. 824 (1989).  In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.  Moreover, even if the training was in some manner deficient, "the identified deficiency in a city's training program must be closely related to the ultimate injury" such that "the deficiency in training actually caused the police officers'" offending conduct.  <u>City of Canton</u>, 489 U.S. at 391.  Andrews simply cannot demonstrate the close relationship necessary to conclude that the city's failure to properly train Fowler <u>caused</u> him to rape Andrews or even raises a question of fact as to causation.

The city's hiring policies were to place a notice of the opening in newspapers, to require completion of a standard application form, to conduct an international background check and a National Crime Information Center Computer Check, and to have a personal interview with selected applicants.  The city's Personnel Policy Manual also required prospective employees to submit to a physical and psychological examination before being employed by the city.

In this case, the evidence demonstrates that Fowler's application was screened by the council, the police chief, and the mayor.  He was interviewed for a part-time position and later appointed as a full-time officer.  The international background check and national criminal computer check reported no negative information about Fowler's background.  Andrews alleges that the hiring procedure was deficient because Fowler was not required to undergo a psychological evaluation, the city did not check his

prior employment record, and the city did not verify the status of his military discharge.

While the actual hiring process given to Fowler's application may not have fully conformed to the city's official policy, this failure in one instance does not render the hiring policies unconstitutional. As Andrews contends, Fowler falsely stated on his application that he received an honorable discharge from the military, when in fact at the time he signed his application, January 2, 1991, his record reflected a general discharge.[1] The city's failure to discover a dishonest statement on Fowler's employment application, however, does not demonstrate deliberate indifference sufficient to subject it to liability for Fowler's subsequent act of violence. The city followed through with a background check of Fowler's criminal record, which revealed no adverse information, and his educational qualifications rendered him fit for the position. As Andrews contends, the city did not verify Fowler's previous employment history, but there is no evidence that any complaints were voiced against Fowler at jobs he listed on his employment application. (Skip Ensley, a subsequent police chief, testified that he had discovered complaints about Fowler at his previous jobs, but not specifically at any job Fowler listed on his employment application.) A negligent failure to check every reference or every past employment record does not evidence deliberate indifference on the part of the city. See Stokes v. Bullins, 844 F.2d 269, 273 (5th Cir. 1988) (noting "mere negligence will not ultimately be a sufficient basis for § 1983

---

[1]Fowler had been diagnosed with an adjustment disorder and an occupational problem, which resulted in his general discharge. Approximately one month after he signed his employment application, however, the military corrected his record to reflect an honorable discharge on the basis that the military had incorrectly concluded that his diagnosis was a personality disorder. Fowler's military record, even under the general discharge, did not reveal any disciplinary action against Fowler or any violence or unlawful conduct on Fowler's part that would render him ineligible to be a police officer.

municipal liability").  We conclude that the district court properly granted the city summary judgment on this issue as well.

**2.**

Price and Merrill may be subject to individual liability under § 1983 as supervisors for failing to adequately receive, investigate, or act upon complaints of sexual misconduct by police department employees if they:

(1)   Received notice of a pattern of unconstitutional acts committed by subordinates;

(2)   Demonstrated deliberate indifference to or tacit authorization of the offensive acts;

(3)   Failed to take sufficient remedial action; and

(4)   That such failure proximately caused injury . . . .

Jane Doe A., 901 F.2d at 645.

Also, a supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.  Tilson v. Forrest City Police Dep't, 28 F.3d 802, 806 (8th Cir. 1994), cert. denied, 115 S. Ct. 1315 (1995).  The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts.  Id. at 807.  This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.  Thelma D., 934 F.2d at 934.

13

**a.**

We first assess the evidence against former Chief of Police Price. We have already recounted the evidence of Price's actions as Chief of Police. As noted above, while this evidence does not create a persistent and widespread pattern of misconduct, as is necessary to subject the city to liability for a municipal policy or custom, the two complaints against Fowler create a question of fact concerning whether Price was individually aware of a pattern of problems with Fowler.

A question of fact also exists as to deliberate indifference or tacit authorization on the part of Price and his failure to take remedial action. Although Price placed Fowler and Hanson in different cars to identify the source of complaints and warned the officers against fraternizing with minors on the very night that Fowler raped Andrews, there is no evidence that he took any disciplinary action against Fowler once he knew of complaints against Fowler specifically. Two officers submitted affidavits attesting that Price knew of Fowler's misconduct and took no action. Price admitted that he had heard locker-room-type talk about Fowler's relations with Andrews after the rape, yet he took Fowler's word when Fowler denied the incident. When told of Fowler's assault against Bonnie Bell the next month, Price responded, "I wouldn't doubt it, that little weasel," referring to Fowler (Appellant's App. at 186), but again he took no action to either discipline or investigate Fowler until he sought Fowler's termination in early August 1991. We conclude that Andrews has demonstrated the existence of a genuine issue of material fact for trial concerning Price's individual liability under § 1983 for failure to act on prior complaints of Fowler's misconduct and failure to adequately supervise Fowler.

The failure to train allegation against Price in his individual capacity fails for the same reasons articulated in the

14

above discussion regarding municipal liability.  The procedures were not inadequate and causation is lacking as well.  We will not repeat the discussion here.

Andrews also appears to argue that she was injured by Price's failure to investigate her rape.  We find this claim to be without merit.  While Price's inaction after learning of Andrews' rape may be continuing evidence of his attitude of tacit authorization or failure to take remedial action, no further constitutional injury resulted to Andrews from this failure. Andrews never reported the incident herself and although she instructed her mother to "press charges," she did not inform her mother of the exact nature of the charge.  Further, her mother decided not to pursue the matter.  While Price's failure to investigate the rape may have violated state law and common sense, it did not rise to the level of a separate constitutional violation of Andrews' rights.  She made no showing that the alleged failure to investigate was on account of her gender so the claim does not implicate equal protection.  See Gomez v. Whitney, 757 F.2d 1005, 1006 & n.1 (9th Cir. 1985) (stating "we can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved").

**b.**

The evidence Andrews offers in support of individual liability on the part of Mayor Merrill is insufficient to survive summary judgment.  Merrill took office as mayor in May 1991.  There is no evidence that he received or was aware of any complaints against Fowler until August 5, 1991, when Price sought to have Fowler

15

discharged from his employment with the police department.[2]  The evidence indicates that Merrill may have had general knowledge that, prior to the time Fowler was hired, there had been some complaints against the police department with respect to other officers.  Those officers, however, had been previously discharged from their employment with the department on the basis of those complaints.  This does not demonstrate that Merrill knew of and disregarded any complaints concerning Fowler's misconduct.  Once again, we come to the same conclusion on the failure to properly hire claim as articulated above.  Accordingly, Andrews has created no genuine issue of material fact to support individual liability on the part of Merrill, and we affirm the grant of summary judgment in his favor.

**B.**

Andrews contends that the defendants conspired to deprive her of her constitutional rights, in violation of 42 U.S.C. § 1985(3), by ignoring and covering up complaints about Fowler's misconduct.  To prove a § 1985(3) claim:

> [A] complaint must allege that the defendants did (1) "conspire . . ." (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

---

[2]The affidavit of former police officer Greg Hanson makes a bare allegation that the city council members and the mayor knew of the complaints against Fowler.  (See Appellant's App. at 186.)  This statement is made without giving any supporting factual basis, and therefore it does not create a genuine dispute of material fact.

<u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102-03 (1971).  The plaintiff must show that the conspiracy is fueled by some "class-based, invidiously discriminatory animus."  <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268 (1993) (internal quotations omitted).

We conclude that the district court's grant of summary judgment on this cause of action was correct.  There is no evidence of any agreement between Price, Merrill, and city council members to violate Andrews' constitutional rights.  There is no evidence of a discriminatory animus toward women.  There is evidence that one police officer engaged in misconduct that caused injury to Andrews and that the chief of police might have been aware of problems with this officer and failed to remedy the misconduct prior to Andrews' injury.  There is no evidence that Price met with Merrill and city council members about Fowler's misconduct until August 1991, two months after Andrews' injury.  Furthermore, at that time, Price requested that the city council discharge Fowler.

Additionally, to succeed on a civil rights conspiracy claim, the plaintiff must demonstrate discriminatory purpose in that the defendants selected the particular course of action "`because of' not merely `in spite of' its adverse effects upon an identifiable group."  <u>Bray</u>, 506 U.S. at 272.  Andrews has submitted no evidence to demonstrate that the city, the mayor, or Price chose their course of action relating to Fowler's behavior <u>because of</u> its effect on an identifiable group -- in this case, women.  The district court did not err in granting summary judgment on Andrews' § 1985(3) claim.

## c.

Finally, Andrews contends that the district court erred in denying her motion to take additional depositions of remaining city

17

council members and other witnesses.  See Fed. R. Civ. P. 30(a)(2)(A).

Under Rule 30(a)(2)(A), a party is entitled to up to ten depositions without leave of court, and to obtain discovery depositions beyond ten, leave of court is required.  The record reveals that Andrews was permitted to take twelve depositions, two more than permitted without leave of court under Rule 30.  Although some of these depositions were taken jointly for both this and a related case, see Bell v. Fowler, No. 95-3571 (8th Cir. Oct. __, 1996), Andrews consented and participated in them (Andrews and Bell share the same counsel).  We see no merit to her contention that she is entitled to more depositions, and we find no abuse of discretion in the district court's denial of her motion.

### III.

Accordingly, we reverse the district court's grant of summary judgment to Price in his individual capacity and remand this claim for trial.  In all other respects, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

18