# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3608

_____

| | | |
|---|---|---|
| S.J., a minor, by T.R., her natural mother and next friend, | * * * | |
| Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Missouri. |
| Kansas City Missouri Public School District; Teresia R. Gilyard, individually and as Principal of Martin Luther King Middle School in the Kansas City Missouri Public School District; William B. Evans, individually and as Counselor of Martin Luther King Middle School in the Kansas City Missouri Public School District; and Gwendolyn E. Squiers, individually and as Vice-Principal of Martin Luther King Middle School in the Kansas City Missouri Public School District, | * * * * * * * * * * * * * * * * | |
| Appellees. | * | |

_____

Submitted: May 13, 2002

Filed: June 26, 2002 (Corrected 7/25/02)

_____

Before HANSEN, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and
    PRATT,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

S.J., a middle school student, lived briefly with the family of Gregory Robertson, a minister who volunteered in the Kansas City, Missouri, public schools. Mr. Robertson met S.J. while he was volunteering at her school, and he later met her mother and grandmother. At the grandmother's recommendation, S.J.'s mother made arrangements for S.J. to live with Mr. Robertson's family. Mr. Robertson was later convicted of sexually abusing S.J. at his home, and S.J. brought a suit under 42 U.S.C. § 1983 against the school district, school administrators, and a counselor, claiming that they failed to receive, investigate, or act on complaints of constitutional violations and that they failed to train Mr. Robertson properly. S.J.'s complaint also contained claims based on state law. The district court[2] entered summary judgment for the defendants on the federal claims and dismissed the state claims without prejudice. We affirm.

I.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). We review an order granting summary judgment *de novo*, viewing the evidence "in the light most favorable to the nonmoving party."

_____

[1] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

[2] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

*Darby v. Bratch*, 287 F.3d 673, 678 (8th Cir. 2002). Applying that standard, we must agree with the district court that Mr. Robertson did not act "under color of state law."

This case, in important aspects, is like *Roe v. Humke*, 128 F.3d 1213 (8th Cir. 1997). In that case, a police officer was accused of sexually molesting a girl whom he first met while working at a local school. The sexual contact occurred after she accompanied him, with her parents' permission, to his farm, and while he was off duty and out of uniform. *See id.* at 1214-15. The parents claimed that they would not have entrusted their daughter to the accused molester but for the fact that he was a police officer. We observed in *Humke* that even if that were true, the knowledge of the individual's status as a police officer alone by the child and her parents was "not sufficient to convert the actions [that the officer] took in the pursuit of his private interests into action taken under color of state law." *Id.* at 1217.

The same principle applies here. Mr. Robertson first met S.J. while working as a volunteer at her school, and S.J.'s mother claimed that Mr. Robertson's status as a school volunteer influenced her decision to let S.J. live with the Robertsons. Assuming that this is true, Mr. Robertson's crime against S.J. nonetheless occurred in his own home and in circumstances unrelated to his role as a school volunteer. In *Humke*, 128 F.3d at 1217, we considered cases where government defendants had been held liable under § 1983 for sexual abuse, observing that those cases uniformly "involved a defendant who was acting under pretense of his authority and who was purporting to exercise the power given him by the state." S.J. has presented no evidence that Mr. Robertson's abusive behavior was perpetrated as a result of any real or purported authority that he held as a school volunteer. S.J.'s living arrangements were made privately between S.J.'s mother and the Robertsons, and any authority exercised by Mr. Robertson over S.J. was unrelated to his status at the school.

We need not and do not reach the question of whether a school volunteer can ever be a state actor for purposes of § 1983. But absent some nexus between

Mr. Robertson's governmental role, if any, and his violation of S.J.'s rights, her claim against the school district under § 1983 must fail. Since she fails to establish a violation "under color of law," as required by § 1983, her claims against the individual defendants also must fail. *See Humke*, 128 F.3d at 1218.

II.

We affirm the district court's judgment in favor of the school district on additional, independent grounds. The school district may be found liable under § 1983 if a complainant's injuries resulted from " 'a governmental custom of failing to receive, investigate and act upon complaints of sexual misconduct of its employees.' " *Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1453 (8th Cir. 1996) (quoting *Thelma D. ex rel. Delores A. v. Board of Educ.*, 934 F.2d 929, 932 (8th Cir. 1991)). To prove such a custom, S.J. must show "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the school district's employees; "[d]eliberate indifference to or tacit authorization of such conduct by the [school district's] policymaking officials after notice to the officials of that misconduct"; and that S.J. "was injured by acts pursuant to the [school district's] custom, *i.e.*, that the custom was the moving force behind the constitutional violation." *Larson*, 76 F.3d at 1453. All of these criteria must be met, but we conclude that S.J. fails to meet any of them.

S.J. suggests that a pattern of unconstitutional misconduct, and school officials' toleration of that misconduct, is demonstrated by an earlier incident involving students from another campus within the school district: Before S.J. was abused, some female high school students accused Mr. Robertson of making sexually inappropriate comments to them during a slumber party for Mr. Robertson's stepdaughter. Those students reported the comments to their principal at Central High School, and the principal revoked Mr. Robertson's volunteer privileges on that campus.

We hold that such limited facts do not prove a "continuing, widespread, persistent pattern of unconstitutional misconduct," *id.*, within the school district. Indeed, we have rejected claims of a pattern of unconstitutional conduct where the violations were considerably more widespread than the ones alleged here. *See*, *e.g.*, *Thelma D.*, 934 F.2d at 933; *Jane Doe A ex rel. Jane Doe B v. Special Sch. Dist.*, 901 F.2d 642, 644, 646 (8th Cir. 1990). At most, the principal at Central High School received complaints about inappropriate comments made by Mr. Robertson off campus at a non-school event, but there were no complaints of offensive contact or sexual abuse at any time, and certainly not in relation to his role in the schools. Such an isolated incident, moreover, unrelated to Mr. Robertson's role as a school volunteer, cannot furnish the basis for finding a pattern of unconstitutional conduct by school district employees or volunteers.

Furthermore, even if Mr. Robertson's abuse of S.J. was related to his role in the schools, S.J. fails to show that school officials were deliberately indifferent to that abuse, much less that school officials tacitly authorized it. Officials at S.J.'s school notified child welfare authorities and S.J.'s mother one day after learning of her abuse at the hands of Mr. Robertson. While that one-day delay may or may not have violated state law requirements for the immediate reporting of suspected child abuse, the interval was so short that it furnishes no proof of a policy of deliberate indifference or tacit authorization. Finally, since S.J. fails to offer evidence of a school district "custom" of tolerating sexual abuse of children at the hands of volunteers or employees, she likewise cannot establish that she was injured by any such custom.

III.

S.J. also claims that the school district and Principal Teresia R. Gilyard are liable under § 1983 for failure to train volunteers such as Mr. Robertson adequately, a claim closely related to her claim that school officials tolerated unconstitutional misconduct. To succeed on this aspect of her case, she must show that these

defendants' " 'failure to train ... employees in a relevant respect evidences a deliberate indifference' to the rights of the students." *Thelma D.*, 934 F.2d at 934 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (internal quotations omitted). To establish this "deliberate indifference," S.J. must offer evidence that these defendants "had notice that [their] procedures were inadequate and likely to result in a violation of constitutional rights." *Thelma D.*, 934 F.2d at 934. S.J. may show that these defendants had notice of the inadequacy of their procedures in two different ways: She may show that the failure to train employees "is so likely to result in a violation of constitutional rights that the need for training is patently obvious," *id.*, or that "a pattern of misconduct indicates that the school district's [or, in this case, Ms. Gilyard's] responses to a regularly recurring situation are insufficient to protect the students' constitutional rights," *P.H. v. School Dist. of Kansas City*, 265 F.3d 653, 660 (8th Cir. 2001).

As we stated earlier in this opinion, there was no showing of a "pattern of misconduct," and there is, in our view, no "patently obvious" need for public schools or principals to train volunteers not to commit felonies at home and in their private lives. We are aware of no authority suggesting that public schools or principals have any such obligation, and we do not believe that the evidence can reasonably support a conclusion that Mr. Robertson's crimes can be attributed in any way to a lack of proper training.

## IV.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.