# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1279

_____

Marsha Ann Mettler, individually and    *
as trustee for the heirs of Shawn    *
Michael Mettler,    *
   *
       Appellee,    *
   *
     v.    *    Appeals from the United States
   *    District Court for the
Edward M. Whitledge, Thomas    *    District of Minnesota.
Haltiner,    *
   *
       Appellants.    *
   *
Ramsey County,    *
   *
       Defendant.    *

_____

No. 98-1280

_____

Marsha Ann Mettler, individually and    *
as trustee for the heirs of Shawn    *
Michael Mettler,    *
   *
       Appellant,    *
   *
     v.    *
   *
Edward M. Whitledge, Thomas    *

Haltiner, Ramsey County                     *
                                            *
              Appellees.                    *
                                            *
                          _____

                  Submitted:  November 18, 1998
                     Filed:  January 25, 1999
                          _____

Before BOWMAN, Chief Judge, LOKEN, Circuit Judge, and SIPPEL,[1] District Judge.
                          _____

BOWMAN, Chief Judge.

After her son Shawn Michael Mettler was shot and killed during a confrontation with Ramsey County Sheriff's deputies, Marsha Ann Mettler sued Ramsey County, Ramsey County Sheriff Patricia Moen, and Ramsey County Sheriff's Deputies Thomas Haltiner and Edward M. Whitledge for alleged violations of 42 U.S.C. §§ 1983 and 1985.  The District Court granted Ramsey County summary judgment on Ms. Mettler's claim alleging municipal liability under Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978), and all defendants summary judgment on Ms. Mettler's § 1985 conspiracy claim.  The District Court denied Deputies Haltiner and Whitledge summary judgment on Ms. Mettler's claim they had violated § 1983 by using excessive force when confronting Shawn Mettler.  Deputies Haltiner and Whitledge appeal, claiming qualified immunity entitles them to summary judgment.  Ms. Mettler cross-appeals the District Court's grant of summary judgment to Ramsey County on the Monell claim and to all defendants on the conspiracy claim, a final order pursuant to Fed. R. Civ. P. 54(b) having been entered with respect to these claims.  We affirm in part, reverse in part, and remand the case with instructions.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, sitting by designation.

When reviewing a grant or denial of summary judgment, this Court considers the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. See Barker v. Ceridian Corp., 122 F.3d 628, 632 (8th Cir. 1997). The parties have vigorously disputed some of the facts of this case. Accordingly, where there are factual disputes, we base the following summary on accounts provided by Ms. Mettler, the nonmoving party.

At approximately 1 a.m. on January 22, 1994, Ramsey County Sheriff's Deputies Thomas Haltiner and Edward Whitledge, accompanied by Whitledge's canine partner Bud, responded in separate patrol cars to a 911 call reporting that someone had discharged a firearm at the Montreal Courts apartment complex in Little Canada, Minnesota. Unable to locate the person responsible for discharging the firearm by patrolling the area in their vehicles, the two deputies began searching Montreal Court's rows of single-vehicle garage stalls on foot. Bud remained in Deputy Whitledge's patrol car.

While the deputies were searching one row of garage stalls, Deputy Haltiner saw a person enter a stall about fifty feet away in another row. Haltiner later said he noticed this person was carrying a "long gun" in his left hand. See Joint Appendix (J.A.) at 458 (Haltiner Dep.). Haltiner told Whitledge what he had seen, and the two deputies walked to the row where Haltiner had seen the suspect. As they passed Whitledge's patrol car, Whitledge summoned Bud to join them.

The two deputies, accompanied by Bud, inspected the row of garage stalls. They found one garage door unlocked and open a few inches. The deputies raised this door further and saw a Dodge Stealth parked inside with its nose pointing toward the far end of the twenty-foot-long garage. Standing outside or slightly inside the garage, Haltiner and Whitledge identified themselves as sheriff's deputies and ordered anyone inside the

stall to come out. No one responded, so Deputy Whitledge ordered Bud to inspect the stall's interior. Bud entered the garage, and as he approached the far end of the stall--near the nose of the Stealth--he began to growl.

Shawn Mettler, carrying a pump-action, "sawed-off" shotgun, was hiding in the garage, either crouched down or prone near the nose of the Stealth. When Bud growled, Shawn fired one shot from his shotgun. This shot struck and killed Bud. Deputies Haltiner and Whitledge then instantly fired their semiautomatic duty pistols. They fired thirty-two shots, emptying the pistols' magazines. Approximately fourteen of the shots struck Shawn, and one bullet--the sequence of shots is unknown--killed him.

After the shooting, both deputies said that, before they began shooting, they had seen Shawn pointing his gun at Deputy Whitledge. Both deputies also reported that Shawn had fired multiple shots at them. However, evidence uncovered after the shooting proved that Shawn had fired only one shot, the shot that struck and killed Bud. Shawn's shotgun was found lying on the garage floor, under his body, with the spent shell from the shot that killed Bud still in the chamber and some undischarged shells loaded in the shotgun's magazine.

The Ramsey County Sheriff's Department ordered an internal investigation of the shooting, but problems hampered the resulting probe. No one in the Sheriff's Department was qualified to conduct ballistics or trajectory analysis, and such tests were not conducted until this litigation commenced more than two years after the shooting. Sheriff's Department investigators also did not record the locations of the shell casings after the shooting, nor did they chart the bullet holes in the wall of the garage. Furthermore, Sheriff's Department investigators have voiced some confusion regarding who was in charge of the investigation, and the qualifications of that lead investigator.

Many factual questions remain regarding the January 22 shooting. The Sheriff's Department could not determine which deputy's shots struck Shawn or which deputy fired the fatal shot. The Sheriff's Department also could not determine whether Deputies Haltiner and Whitledge were inside or outside the garage when they started shooting, or how long the shooting lasted. (Most estimates indicate the shooting lasted less than ten seconds.) A shooting review board convened, reviewed the January 22 shooting, found the deputies were justified in returning fire after Shawn shot Bud, and cleared them of any wrongdoing.

On April 2, 1996, Ms. Mettler filed suit against Ramsey County, and, in their individual capacities, Sheriff Moen and Deputies Haltiner and Whitledge, alleging the defendants were liable under 42 U.S.C. §§ 1983 and 1985. Count I of Ms. Mettler's four-count complaint alleged that Deputies Whitledge and Haltiner had violated Shawn's constitutional rights by using excessive force during the January 22 confrontation, and that this violation resulted in Shawn's death. Count II alleged that Ramsey County violated Shawn's constitutional rights by training its deputies negligently and by showing deliberate indifference to the deputies' custom, pattern, or practice of using excessive force. Count III alleged that Sheriff Moen had supervisory liability for failing to correct the Sheriff's Department's pattern of providing inadequate training and its deputies' pattern of using excessive force. Count IV alleged that all the defendants had conspired to violate Shawn's constitutional rights by permitting or encouraging the use of excessive force, conducting an inadequate investigation, and concealing evidence of wrongdoing. Ms. Mettler later recharacterized Count IV as a claim that the defendants had conspired to conceal evidence from her, thus violating her constitutional rights by denying her the opportunity to pursue her §§ 1983 and 1985 claims in fair litigation. See J.A. at 272 (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 32 (Aug. 5, 1997)).

The parties stipulated to the dismissal of Count III.  The defendants then moved for summary judgment on Counts I, II, and IV.[2]  The District Court granted summary judgment to Ramsey County on Count II and to all defendants on Count IV.  However, the District Court denied defendants Haltiner and Whitledge summary judgment on Count I, despite the defendants' argument that, because they were police officers, qualified immunity protected them from liability on Ms. Mettler's § 1983 claim.  Deputies Haltiner and Whitledge filed an interlocutory appeal of the District Court's denial of their motion for summary judgment on Count I on qualified-immunity grounds.  The District Court then made its order granting summary judgment to Ramsey County on Count II and to all defendants on Count IV final pursuant to Fed. R. Civ. P. 54(b), and Ms. Mettler cross-appealed the District Court's grant of summary judgment on Counts II and IV.

II.

Before we resolve the issues raised in this appeal and cross-appeal, we pause to explain the limited jurisdiction we have over them.  This Court has jurisdiction to hear Haltiner and Whitledge's interlocutory appeals because, under the collateral order doctrine, a district court's denial of a claim of qualified immunity may be appealed immediately.  See Mitchell v. Forsyth, 472 U.S. 511, 525, 530 (1985); Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).  However, pursuant to the Supreme Court's decisions in Johnson v. Jones, 515 U.S. 304 (1995), and Behrens v. Pelletier, 516 U.S. 299 (1996), this Court's jurisdiction on interlocutory appeal is limited to the resolution of the issue of qualified immunity.  See Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998).  We may not consider summary judgment on the merits of the case at this interlocutory stage.  See id.  This Court also has jurisdiction to resolve the

---

[2]The record does not indicate whether the parties stipulated to dismissal of Count IV as it pertains to Ramsey County Sheriff Moen, but Sheriff Moen did not move for summary judgment on this count and is not a party to this appeal.

issues raised in Ms. Mettler's cross-appeal because the District Court entered its order pursuant to Federal Rule of Civil Procedure 54(b), thus making the order final for the purpose of appeal under 18 U.S.C. § 1291.  See Kocher v. Dow Chem. Co., 132 F.3d 1225, 1228 (8th Cir. 1997); see also Fed. R. Civ. P. 54(b).   Our review of summary judgment issues is de novo.  See Elder v. Holloway, 510 U.S. 510, 516 (1994); Liebe v. Norton, 157 F.3d 574, 576 (8th Cir. 1998).

III.

Deputies Haltiner and Whitledge claim the District Court should have granted them summary judgment on Count I, Ms. Mettler's excessive force claim, because qualified immunity protects them from liability.  We conclude the deputies are entitled to summary judgment and reverse the District Court.

To withstand a claim of qualified immunity at the summary judgment stage,

> a plaintiff must assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.

Liebe, 157 F.3d at 577 (internal citation omitted); see also Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982) (saying that government officials have qualified immunity from civil liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

Ms. Mettler has failed to show that Deputies Whitledge and Haltiner violated a constitutional right "clearly established at the time of the violation."  The Fourth

Amendment protects citizens from being seized through excessive force by law enforcement officers. See Graham v. Connor, 490 U.S. 386, 395 (1989); see also Tennessee v. Garner, 471 U.S. 1, 9 (1985) (applying Fourth Amendment analysis to an apprehension through the use of deadly force); Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995) (same). But this generalized right to be free from an unreasonable use of excessive force during a police seizure does not clearly establish a right for purposes of a qualified-immunity analysis. See Anderson v. Creighton, 483 U.S. 635, 639 (1987) (rejecting that plaintiffs may rely on broad, generalized rights such as "the right to due process of law" to show a clearly established right). Rather, Ms. Mettler must show the right was clearly established in a particularized sense relevant to the case at hand. See id. at 640.

Ms. Mettler has not shown a clearly established right in a particularized, relevant sense. No federal court has held that the Constitution forbids police officers, after being fired upon by a suspect, from returning fire. The facts of this case, even when viewed in the light most favorable to Ms. Mettler, reveal that Deputies Haltiner and Whitledge fired at Shawn only after Shawn had first shot and killed Bud, the police dog. The two deputies were standing scarcely twenty feet from the shooter, facing a suspect with a high-powered weapon who was hiding in a darkened garage, was concealed by a parked car, and had exhibited a willingness to resist an exercise of police authority through the use of deadly force. Given these circumstances, we find no "clearly established" constitutional right that Deputies Haltiner and Whitledge violated. Therefore, Deputies Haltiner and Whitledge are protected by qualified immunity from § 1983 liability for their role in the shooting death of Shawn Michael Mettler.

Ms. Mettler argues that the facts of this case are too uncertain for this Court to grant summary judgment. We cannot resolve at the summary judgment stage the factual disputes raised in this case, see Collins, 153 F.3d at 595, but we are not required to let bare allegations, unsupported by the record, prevent us from finding that

Ms. Mettler has failed to show a clearly established right in the particularized circumstances. See Otey v. Marshall, 121 F.3d 1150, 1151 n.1 (8th Cir. 1997). For example, Ms. Mettler suggests that, in retribution for Shawn's killing Bud, Deputy Whitledge might have shot and killed Shawn while Shawn was lying on the floor wounded after a break in the shooting. See Brief of Appellee at 14-15. However, no reasonable reading of the record supports this speculation. Statements from numerous citizens, consistent with the reports of the two deputies, indicate all the gunshots were fired together in a short period of time. There is no support in the record for the suggestion that Deputy Whitledge shot and killed Mettler after a hiatus in the shooting.

Ms. Mettler also argues that the deputies should be held liable because they failed to follow Sheriff's Department guidelines, and that their actions might have helped precipitate the confrontation. In particular, Ms. Mettler and her expert witnesses claim the two deputies should have waited for additional backup, barricaded Shawn in the garage stall with a patrol car, or engaged in other protective actions. Most of the guidelines cited are for the protection of the sheriff's deputies, not of armed suspects, and in any event the breach of such guidelines is not dispositive to our determination of whether the deputies violated a clearly established constitutional right. See Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1989) ("While the unfortunate incident that gave rise to this lawsuit would not have occurred if [the defendant police officer] had followed the [d]epartment's guidelines, police department guidelines do not create a constitutional right.").

Finally, Ms. Mettler argues that Deputies Haltiner and Whitledge violated Shawn's constitutional rights prior to the shooting. In particular, Ms. Mettler argues the deputies unreasonably "seized" Shawn, either by trapping him in the garage or by sending the police dog Bud to locate him. Police "seize" a person by engaging in conduct that would make a reasonable person feel he was not free to leave. See United States v. Bryson, 110 F.3d 575, 579 (8th Cir. 1997); United States v. Dixon, 51 F.3d 1376, 1379 (8th Cir. 1995). Other courts have recognized dispatching a police dog "to

find, bite, and detain" a suspect may constitute a seizure. See, e.g., Vathekan v. Prince George's County, 154 F.3d 173, 178-79 (4th Cir. 1998) (stating that seizure by a police dog can constitute an excessive force claim under the Fourth Amendment). However, in order for police actions to constitute a seizure, the police must make physical contact with the suspect, or the suspect must acquiesce to an assertion of police authority. See Bryson, 110 F.3d at 579; Ludwig, 54 F.3d at 471. There is no evidence in the record to support a finding that Shawn acquiesced to an assertion of police authority, or that physical contact occurred before Shawn shot Bud. Therefore, no seizure occurred before the shooting began. That being so, we need not address whether the deputies' conduct constituted an unreasonable seizure.

IV.

Ms. Mettler next contests the District Court's grant of summary judgment to Ramsey County on Count II. In Count II, Ms. Mettler alleged that the County should be liable under Monell for showing deliberate indifference to the Sheriff's Department's custom, pattern, or practice of using excessive or deadly force.

Under 42 U.S.C. § 1983, a municipality may not be held vicariously liable for the unconstitutional acts of employees. See Monell, 436 U.S. at 694. However, a municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. See id.; see also Doe v. Washington County, 150 F.3d 920, 922 (8th Cir. 1998). For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694; see also Board of Comm'rs v. Brown, 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement).

Contrary to indications in Ms. Mettler's brief, this Court does not use the terms "policy" and "custom" interchangeably when conducting a Monell analysis. Rather, a

"policy" is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. See Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998) (citing Jane Doe A v. Special Sch. Dist., 901 F.2d 642, 645 (8th Cir. 1990)). Ms. Mettler has not identified any official policy that arguably played a role in her son's death.

Therefore, we must determine whether Ms. Mettler has come forward with evidence from which a jury could reasonably find the existence of a relevant municipal custom. According to Ware, Ms. Mettler must satisfy three requirements to prove a municipal custom exists. These requirements are:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Id. (quoting Jane Doe A, 901 F.2d at 646) (alterations in the original).

Ms. Mettler offered two types of evidence to prove the existence of a "continuing, widespread, persistent pattern of unconstitutional conduct" by Ramsey County employees. First, Ms. Mettler produced evidence that citizens' complaints were filed against Deputies Whitledge and Haltiner before their confrontation with her son Shawn. Second, Ms. Mettler offered evidence concerning problems in the post-incident investigation into the January 22, 1994, shooting. After reviewing this

evidence, this Court concludes Ms. Mettler has failed to create a genuine issue of material fact regarding the existence of a municipal custom.

Ms. Mettler has produced evidence that fifteen citizens' complaints were filed against Deputies Haltiner and Whitledge prior to the January 22 shooting. See J.A. at 410-11. Seven complaints, filed between September 1987 and 1993, accuse Haltiner of excessive or unnecessary force, but none of these complaints were sustained after departmental investigation, even in part. See id. at 410. Meanwhile, only two complaints against Whitledge, those filed in August 1982 and May 1986, accused him of excessive or unnecessary force, and only the May 1986 complaint was sustained in part. See id. at 410. Ms. Mettler has produced no evidence regarding the factual background of these previous complaints, nor has she shown that the incidents giving rise to these complaints bear any factual similarity to the January 22, 1994, confrontation with her son. Ms. Mettler also has failed to produce evidence that the investigations into these complaints, or investigations into any complaints filed against other Ramsey County Sheriff's deputies, were inadequate.

This Court has held municipalities liable under Monell when the plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct. See, e.g., Parrish v. Luckie, 963 F.2d 201, 204-05 (8th Cir. 1992) (reviewing the "detailed and compelling" evidence the plaintiff presented that the defendant police department avoided, ignored, and covered up complaints of physical and sexual misconduct by officers); Harris v. City of Pagedale, 821 F.2d 499, 501-06 (8th Cir.) (finding a plaintiff had proven a municipal custom through the presentation of detailed evidence regarding the particular police officer's previous misconduct, and the city's failure to investigate or punish that conduct), cert. denied, 484 U.S. 986 (1987). However, when the plaintiff has not made such a showing, the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force. See Rogers v. City of Little Rock, 152 F.3d 790, 799 (8th Cir. 1998).

-12-

Shortcomings in the investigation of the January 22 shooting also do not demonstrate a "continuing, widespread, or persistent pattern of misconduct." Evidence that a police department has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to use excessive force without concern for punishment. See, e.g., Vann v. City of New York, 72 F.3d 1040, 1050 (2d Cir. 1995); Fiacco v. City of Rensselaer, 783 F.2d 319, 329-31 (2d Cir. 1986), cert. denied, 480 U.S. 922 (1987). However, even if we are to assume as true that there were shortcomings in the investigation into the January 22 shooting, the shortcomings would not prove the flawed investigation was a moving force behind the deputies' alleged misconduct. A single incident normally does not suffice to prove the existence of a municipal custom. See Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion); see also Andrews v. Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996) (finding that one instance of a police department's departure from its hiring procedures did not suffice to show the department normally hired officers without proper regard for community safety). In addition, an inadequate investigation into the January 22 shooting could not have caused Deputies Haltiner and Whitledge to use excessive force. Rather, Ms. Mettler would need to show that Ramsey County had failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate Shawn's rights with impunity. See id. at 1076 (affirming a district court's grant of summary judgment where there was no evidence that the municipality had been deliberately indifferent to complaints received prior to the constitutional violations alleged in the plaintiff's complaint). As we have mentioned supra, Ms. Mettler has offered no evidence that any previous investigations were inadequate, or that such investigations were a moving force in the deputies' actions toward Shawn. Accordingly, we affirm the District Court's grant of summary judgment for Ramsey County on Count II of Ms. Mettler's complaint.

V.

Finally, Ms. Mettler challenges the District Court's grant of summary judgment on Count IV of her complaint. Count IV alleges all the defendants violated 42 U.S.C. § 1985(3) when they conspired to conceal evidence of wrongdoing and to prevent Ms. Mettler from receiving a fair trial on her claims that Ramsey County and its deputies had violated Shawn's constitutional rights. After reviewing the issue de novo, we find that Ms. Mettler has failed to produce evidence of a conspiracy and that summary judgment therefore was correctly granted.

To recover for a conspiracy to violate her civil rights in violation of 42 U.S.C. § 1985(3), Ms. Mettler must prove four elements: (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right. See Andrews, 98 F.3d at 1079 (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).

Because Ms. Mettler has not offered evidence to support her conspiracy claim, the claim cannot proceed. She has pointed to numerous problems in the Ramsey County Sheriff's Department post-incident investigation. She has produced no evidence that such shortcomings were intentional, or that they arose from a conspiracy among the defendants. Speculation and conjecture are not enough to prove a conspiracy exists. See Hinkle v. City of Clarksburg, 81 F.3d 416, 421-22 (4th Cir. 1996) (holding that the plaintiff had not offered sufficient evidence of a conspiracy to avoid summary judgment; the plaintiff had shown important evidence had been misplaced but had offered no evidence of concerted action). Therefore, we affirm the decision of the District Court to grant defendants Ramsey County and Deputies Haltiner and Whitledge summary judgment on Count IV of Ms. Mettler's complaint.

## VI.

For the reasons stated above, the decision of the District Court is reversed with respect to Count I, and the case is remanded with instructions that summary judgment be entered in favor of defendants Haltiner and Whitledge on that Count on the grounds of qualified immunity. In all other respects, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.